### HANLEY et al. v. KANSAS & T. COAL CO.

(Circuit Court, W. D. Arkansas, Ft. Smith Division. June 24, 1901.)

1. PERPETUITIES—COMMON-LAW RULE—CREATION OF FUTURE CONTINGENT ESTATE.

A devise over which may not take effect, under the terms of the will, for 200 years, is void, under the rule against perpetuities, although it may take effect, by the prior termination of the precedent estate, at any time; the rule being that, to be valid, the limitation must be so made that the estate not only may, but must, vest within the prescribed period.

2. WILLS—CONSTRUCTION—CONTINGENT DEVISE.

A testator devised lands in trust to be used and occupied by M. and the children of her body and their descendants for a period of 200 years, at the end of which time the lands should vest in the county in which they should then be situated for certain purposes specified. By a subsequent clause it was provided that, if the lands should at any previous time be abandoned by M. and her children and their descendants, the title should vest at once in the county in which they were then situated.

*Held*, that the interest of the county was a contingent and not a vested remainder, and subject to the rule against perpetuities.

**3. SAME—EFFECT OF LIMITATION VOID FOR REMOTENESS.**

The provision of such will which vested the title in the trustee, and limited the power of alienation for 200 years, was also void, and on the death of the testator the equitable, if not the legal, estate in fee in the lands vested at once in M. and the children of her body and their descendants who were then in esse, with the right to compel a conveyance of the legal title from the trustee.

**4. EQUITY JURISDICTION—SUIT FOR POSSESSION OF LANDS—CONSTRUCTION OF PLEADINGS.**

A bill sought to have a trust in favor of complainants declared in lands under the provisions of a will, to have a trustee appointed, and for an accounting for rents and profits from the defendant, who was alleged to be in possession, claiming adversely. The facts alleged, however, showed that, if complainants had any interest in the lands, they were vested with the equitable fee, if not the legal fee, and were entitled to possession. *Held*, that the issues involved under such state of facts must be determined by a court of law, and that a federal court of equity was without jurisdiction of the suit.

In Equity. On demurrer to amended bill.

The amended bill in this case shows: That on the 11th day of July, 1870, Elijah J. Woolage died in the county of Sebastian and state of Arkansas, seised and possessed of 320 acres of land situated in that county, and leaving the following will, which was duly probated on the 12th of September, 1870: "In the Name of God, amen! I, Elijah Woolage, of Sebastian county, state of Arkansas, being of sound mind and disposing memory, and calling to mind the uncertainty of life, and being desirous to dispose of all such worldly estate as it has pleased God to bless me with, I give and bequeath the same as follows; that is to say: First. At my death I desire that my body be decently buried, and that all my funeral expenses and all other of my just debts, if any, be fully paid out of my personal property and estate. Secondly. I give and bequeath to my loving wife, Martha Woolage, all the personal property and effects of which I die seised and possessed, subject to the payment of my funeral expenses and just debts, as her own absolute property, in the event that she is living at my death; and, in case that I should survive my said wife, then all my property, after paying all just debts, shall be divided equally among and between my former slave, Mariah Woolage, colored, and the heirs and children of her body then surviving, share and share alike. Thirdly. I give and bequeath all the real estate which I own and possess, or of which I am seised at the time of my death, subject to the dower of my said wife, Martha, in trust to a trustee hereinafter appointed, for the use and benefit of said Mariah Woolage and the children of her body and their descendants, for the period of two hundred years from the date of my death; that is to say, the trustee hereinafter to be appointed and his successors to have a general supervision and superintendence over the farm or farms and lands herein devised, so as to divide the same annually or biannually, or for a longer time if he should deem it advisable, so as to make equitable distribution of the lands for cultivation according to the number and capacity of the different individual beneficiaries herein provided for, and that the said trustee to collect sufficient of the proceeds of the products of said real estate to ——— the taxes paid up and all the lands herein devised to keep the same in good repair. Fourthly. After the expiration of the period of 200 years aforesaid, all real estate herein devised I bequeath and shall vest in and become the property of the county in which the same shall be situated at the time, and for the purposes and uses following; that is to say, the same to be under the direct supervision and control of the county court of the county in which the same may be situated, to be used exclusively for the use and benefit of the paupers of said county, so to be used forever; and, should said lands and real estate be abandoned by the said Mariah Woolage and

the children of her body and their descendants at any time before the expiration of the 200 years, then as soon as so abandoned the ——— shall vest in the county in which said ——— may be situated, to be used and controlled as and for the purposes hereinbefore directed. Lastly. I do hereby constitute and appoint my friend Caswell B. Neal trustee and executor of this my last will and testament, hereby revoking all former wills or testaments by me heretofore made, and in case my said trustee die, resign, or for any cause fail, refuse to act, or in case any subsequent trustee fail or refuse to act as trustee and executor, then and in that event the county court of the county in which said real estate may be situated may and shall appoint a trustee and executor to carry this will into effect, according to the tenor thereof, who shall be allowed and paid a reasonable compensation therefor out of the proceeds of said lands; the amount to be fixed and allowed by the probate court of the county in which said lands may be situated. In witness whereof, have hereunto set my hand and affixed my seal this 8th day of January, A. D. 1870." That Martha Woolage, his widow, survived him, but died shortly thereafter; that Mariah Woolage also survived him, and afterwards, in 1873, died intestate; and that the plaintiffs in this suit are her children and their descendants. They allege that by virtue of said will they are the owners of an estate in the lands referred to, and are entitled to the rents, profits, and uses accruing and arising from the same, and are entitled to have the possession and enjoyment thereof, and that the said defendant has wrongfully entered into and without right seized possession of said lands for the purpose of digging out and mining coal therefrom, and for a long period of time has continued unlawfully to hold the said lands and mine coal out of the same, and sell and dispose of the same, converting the proceeds arising therefrom to its own use and benefit, and depriving the plaintiffs of the same, and by means of which unlawful acts on the part of the said defendant it is now justly accountable to plaintiffs in a large sum of money, to wit, the sum of $20,000, and, by means of said unlawful acts of the defendant, plaintiffs are deprived of the use and enjoyment of the said lands, and the said defendant is now continuing its wrongful occupancy and possession of the said lands, and is continuing to take out and remove therefrom large quantities of coal, to the plaintiffs' injury and damage. It is also alleged in the complaint that Caswell B. Neal, who was named and appointed as trustee and executor in the said last will and testament, failed and refused, in his lifetime, to accept the appointment as trustee, and has since departed this life, so that in fact there has never been a trustee to carry into effect the terms and provisions of the said last will and testament. The plaintiffs further allege that the defendant claims to own the said lands, but in what manner, or in virtue of what right, they are unable to state; that, because of the long-continued use of the lands in taking out and mining therefrom coal, large sums of money have been expended by the defendant, and much larger sums have come to the hands of the defendant as proceeds of the sales of coal, the amounts of receipts and expenses being unknown to plaintiffs, but that the net amount due plaintiffs will not be less than the sum above stated, and that, in order to ascertain the correct amount of receipts and expenses, an accounting is necessary. The prayer in the bill is that "the rights and title of the plaintiffs to the possession and use of said lands be established, and that they may have a decree against the defendant accordingly; that a trustee be named and appointed by this court, with full power and authority to carry into effect the provisions of the said last will and testament; that an accounting be had of the issues and profits arising from the said land during the time defendant has held possession of the same, and which have been converted by it to its own use and enjoyment, and of the expenses chargeable against the same, and that the correct balance be ascertained, and that plaintiffs have judgment for the amount thereof against the defendant; and, finally, for such other and further relief as may be warranted by the facts and circumstances, and as may be consistent with the rules and practice in equity, to the same extent as though specially prayed for." It does not appear from the bill whether there was ever any administration upon the estate of either Elijah J. Woolage or

Mariah Woolage, nor does it appear from the bill who of the children of Mariah Woolage, or descendants of her body, were living at the death of Elijah J. Woolage. The demurrer to the amended bill is on the following grounds: First. The plaintiffs do not state facts sufficient to constitute a cause of action, and have not stated in said bill a case which entitles them, or any of them, to the relief therein prayed. Second. That no right, title, or interest, either in law or equity, accrued to the plaintiffs, or any of them, under and by virtue of the will set forth in the complaint.

Chas. E. Warner, Ira D. Oglesby, and Robert A. Rowe, for plaintiffs.

Hill & Brizzolara, for defendant.

ROGERS, District Judge (after stating the facts). The intention of the maker of this will seems to me manifest. He and his wife were both old, and they had no children. The beneficiaries under the will were his former slaves. They had, no doubt, been faithful while in slavery, and, attached to him, had remained with him after they were freed. They had doubtless enabled him to accumulate this property, and therefore had a stronger claim on his bounty than any one else. He knew they were unlettered, improvident, and unable to cope with their environments. He wished not only to provide against those whom he thought might overreach them, but against their own improvidence. To this end he invoked the aid of a trustee, sought to vest the estate in him for the use and benefit of Mariah Woolage and the children of her body and their descendants, and to make it inalienable for 200 years. The reason for vesting the remainder over in the county in which the land might be located at that time was, no doubt, because there was no person or corporation who could with any degree of certainty be named that would be in existence at that time; and, because he desired to induce the descendants of Mariah Woolage to remain on said place, he inserted a provision in the deed that as soon as they should abandon said land it should vest in the county in which the same was situated, for the use and benefit of the paupers of said county. No doubt, the reason why he selected the paupers as the object of his charity was because he knew that "the poor are always with us," and he could not know to what other charitable use it might be devoted at the end of 200 years. The scheme he devised was doubtless impracticable, if it had been legal, but the rule against perpetuities is fatal to the devise over on condition to the county. I Washb. Real Prop. (5th Ed.) top page 115, star page 82, par. 57; Id. top page 468, star page 293, par. 5; 2 Washb. Real Prop. (5th Ed.) top page 28, star page 460, par. 30; 1 Jarm. Wills, p. 502; Gray, Perp. § 201. From these authorities and others the following principles are deduced: First. No interest subject to a condition precedent is good, unless the condition must be fulfilled, if at all, within 21 years after some life in being at the creation of the interest. Second. A devise over on condition may take effect at a future date, since it affects the possession only, and not the seisin, of the land; nor is there any limit in which the term must take effect in order to be valid, provided the period does not reach that which constitutes what the law calls a "perpetuity,"—that, namely, of a life or lives in being and 21 years and a fraction of a year after-

110 F.—5

wards. Third. The policy of the law is against clogging the free alienation of estates, and it has become an imperative, unyielding rule of law—First, that no estate can be given to an unborn child of an unborn child; and, second, that lands cannot be limited in any mode so as to be locked up from alienation beyond the period of a life or lives in being and 21 years after, allowing the period of gestation, in addition, of a child en ventre sa mere who is to take under such a limitation. Fourth. A remainder is an estate which by its terms is to take effect at the expiration of a prior estate which is created by one and the same instrument. And there can be no remainder, properly speaking, after an estate in fee simple; nor could that estate be a remainder which, instead of coming in and taking effect at the natural expiration of a prior estate, rises up and cuts it short before its regular determination. Without referring to the numerous authorities cited, and which might be collated, bearing on these questions, it is sufficient to say that the rules laid down seem to be established not only in this country, but in England, and to be of practically universal application, unless in some way modified by statute.

It was urged at the hearing that the interest devised over to the county was a vested interest, which took effect immediately upon the death of the testator, and therefore not obnoxious to the rule against perpetuities. The language of the will forbids that construction. The fourth paragraph is as follows:

"After the expiration of the period of two hundred years aforesaid, all real estate herein devised, I bequeath and shall vest in and become the property of the county in which the same shall be situated * * * to be used exclusively for the use and benefit of the paupers of said county, so to be used forever; and, should said lands and real estate be abandoned by the said Mariah Woolage and the children of her body and their descendants at any time before the expiration of the two hundred years, then, as soon as so abandoned, the same shall vest in the county in which the said lands may be situated."

The rule is thus stated by Gray (paragraph 108):

Whether a remainder is vested or contingent depends upon the language employed. If the conditional element is incorporated into the description of or the gift to the remainder-man, then the remainder is contingent; but if, after giving a vested interest, a clause is added devising it, the remainder is vested. Thus, on a devise to A. for life, remainder to his children, but, if any child dies in the lifetime of A., his share to go to those who survive, the share of each child is vested, subject to be devested by his death. But on a devise to A. for life, remainder to such of his children as survive him, the remainder is contingent.

In view of the language just quoted, it would seem conclusive that the devise over on condition in this case creates a contingent remainder. The contingency upon which the estate in remainder may take effect might occur within one year, or might be postponed until the expiration of 200 years. Cases illustrating the question may be found in Gray, Perp. §§ 235–237. So much of the will as vests an estate in the trustee, and renders it inalienable for 200 years, in the opinion of the court, is void. In 2 Washb. Real Prop. (5th Ed.) top page 760, star page 360, the author says:

Not only is the rule, thus modified, imperative in its bearing upon the limitation of an executory interest, but the limitation, in order to be valid, must be so made that the estate not only may, but must, vest in possession within the prescribed period. If, by any possibility, the vesting may be postponed beyond this period, the limitation will be void. And the effect of a limitation over being void by reason of its being too remote is that the instrument—the will, for instance—is to be construed as if no such clause were inserted in it, and the first taker holds his estate discharged of the conditions or limitation over. If this be in terms for life, he has a life estate; if in fee simple, he has a fee simple absolute. Where a vested estate is given distinctly, and there are annexed to it conditions, limitations, powers, trusts, including trusts for accumulation, or other restraints relative to its use, management, or disposal, that are not allowed by law, it is those restraints and the estates limited on them that are void, and not the principal or vested estate. If by possibility it may not vest within the prescribed limits of time, it is a void limitation, although in the end it does in fact happen that the person might have taken within the time fixed by the rule. And a limitation extending beyond the period of perpetuity, and therefore void as to that part, is void in the whole, both as to the period within and that beyond the limits of perpetuity.

Illustrations by the author follow this statement of the text.

In 1 Perry, Trusts, § 382, the author says:

The same rule applies with equal force in law and equity, and trusts and beneficial or equitable estates are subject to the same restrictions. A perpetuity will no more be tolerated when it is covered by a trust, than when it displays itself undisguised in the settlement of a legal estate. "If," as Lord Guilford said, "in equity you could come nearer to a perpetuity than the common law admits, all men, being desirous to continue their estates in their families, would settle their estates by way of trust, which might make well for the jurisdiction of chancery, but would be destructive to the commonwealth."

And in section 384:

In private trusts the beneficial interest is vested absolutely in some individual or individuals who are, or within a certain time may be, definitely ascertained, and to whom, therefore, collectively, unless under some disability, it is, or within the allowed limit will be, competent to control, modify, or end the trust. Private trusts of this kind cannot be extended beyond the legal limitations of a perpetuity, as before stated. Nor can a settlor give his trustees a power to appoint the property subject to a trust, to new trusts to arise at or upon the termination of the trusts created by himself. But a trust created for charitable or public purposes is not subject to similar limitations, but it may continue for a permanent or indefinite time.

And in section 386:

A legal estate in fee cannot be conveyed to a person with a provision that it shall not be alienated, or that it shall not be subject to the claims of creditors; and so trusts cannot, in general, be created with a proviso that the equitable estate or interest of the cestui que trust shall not be alienated or charged with his debts. If it is ascertained that an interest is vested in the cestui que trust, the mode in which or the time when he is to reap the benefit is immaterial. The law does not allow property, whether legal or equitable, to be fettered by restraints upon alienation. Therefore, when an equitable interest is once vested in the cestui que trust, he may dispose of it, or it may pass to his assignees by operation of law, if he becomes a bankrupt.

The rules which I have stated apply both to legal and equitable interests in both realty and personalty. Gray, Perp. § 202. We come now to consider what relations, as shown by the allegation in the bill, the plaintiffs in this suit bear to the subject-matter thereof. The only interest claimed by the plaintiffs is such as they acquired

under the will. They say they are the children and grandchildren of Mariah Woolage, and descendants of her body, but whether either or any of them were born at the death of the testator the bill does not show. An acquirement of any interest under the will depends upon the question as to whether they were in esse at the death of the testator. Whether, therefore, they acquired any interest under the will, does not appear. If they acquired no interest under the will, they cannot be entitled to an accounting for rents, profits, or uses accruing and arising from the use of said land. This would be so, without reference to whether, on the allegations of the bill, the equitable jurisdiction of a federal court would attach to such a case as this. The bill, therefore, is fatally defective in that regard. It does, however, appear from the bill that Mariah Woolage survived the testator, but died intestate, and that plaintiffs are her children and grandchildren and their descendants; but they do not claim by descent from her, nor is it made to appear that she died seised and possessed of this land, or that any administration on her estate was ever had. It can scarcely be urged that plaintiffs could recover on that theory under the allegations of the bill.

It follows from what has been said above that the equitable, if not the legal, estate in fee vested immediately upon the death of the testator in the first takers under the will. Who were they? In the opinion of the court, it was Mariah Woolage and the children of her body, and their descendants in esse at the death of the testator. Upon his death, if they were not immediately vested with the legal estate, they were vested with the equitable fee thereto, and had the immediate right to demand of and compel the trustee to convey the legal fee to them. The trustee never entered upon the discharge of his duties, and we are not advised by the terms of the bill who took possession and control of the estate. When the will, shorn of its void features, as stated above, and the allegations of the bill as applicable to it, thus shorn, are considered, the bill is very much in the nature of a suit in ejectment. It stands in this way: The plaintiffs are out of possession. The defendant is and has been in possession for many years unlawfully, and still remains in possession, but claiming title adversely to plaintiffs. That, by reason of the use and occupancy of said place, defendant derived a large sum of money from the sale of coal taken therefrom. But the whole scope of the bill shows that the pleader intended it as a bill to quiet the title of the plaintiffs to the land claimed under and by virtue of the will, to have a trustee appointed in whom the legal title should be vested, to administer the estate under the will, and for an accounting of the profits realized by the defendant from the real estate, and to have the possession of the land delivered to the trustee. The demurrer admits the truth of all the facts which are properly pleaded. For the purposes of this decision, assuming that the plaintiffs, or some of them, are the children of Mariah Woolage, or their descendants, and that they were in esse at the death of the testator, the question arises whether such plaintiffs, being vested with the equitable fee, if not the legal fee, of the land, and being out of possession of the same (the lands being claimed and held ad-

versely by the defendant), can maintain a bill in the federal court for an accounting of rents and profits of the land, or for the net proceeds of coal taken therefrom by the defendant, or for the purpose of quieting the title thereto, or for the possession thereof, or for any one or more or all of said purposes. No argument or authority is necessary to show that a court of equity will not take jurisdiction at the instance of a plaintiff out of possession to determine, as between such plaintiff asserting title and a defendant in possession claiming adversely, the simple and naked questions of who holds the legal title to the land, or the right to the possession thereof. Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873. Nor is authority required to show that in such a case as that the equity jurisdiction of the federal court would not attach because facts are stated in the bill which in a proper case would give the court jurisdiction on the ground of an account between the parties, for the reason that an accounting depends upon the title or right to possession, and the jurisdiction to try the title is in a court of law. Rev. St. U. S. § 723; article 7 of the constitution of the United States. See, also, cases cited in volume 2 of the notes of Gould & Tucker to Rev. St. U. S. § 723. Nor can the equity jurisdiction of a federal court attach to quiet title in favor of a plaintiff who is either out of possession or has not acquired the legal title, as against a defendant in possession asserting adverse title. Frost v. Spitley, 121 U. S. 552, 7 Sup. Ct. 1129, 30 L. Ed. 1010; Dick v. Foraker, 155 U. S. 415, 15 Sup. Ct. 124, 39 L. Ed. 201; Adoue v. Strahan (C. C.) 97 Fed. 691.

It is urged that a court of equity will take jurisdiction for the purpose of construing a will. For the purposes of this decision, the jurisdiction of a federal court in equity to construe a will may be conceded, but the answer to that contention is that such is not the purpose of the bill. The construction of the will may be, and the court thinks it is, incidental to the determination of the case; but the question here is not the construction of the will, that the rights of the parties beneficiary may be established and declared. The question here is whether any of the parties beneficiary under the will have any rights at all, as against a party defendant claiming adversely to them all, and a court of equity has no jurisdiction to determine a question of that kind. The remedy in a court of law is adequate and complete to determine that question. For the reasons stated, in the opinion of the court the demurrer in this case ought to be sustained, and it is so ordered.