# PANKEY v. ORTIZ ET AL.

## [No. 2146, Jan. 14, 1921.]

### SYLLABUS BY THE COURT.

1. In a suit to quiet title, where the complaint alleges the defendants are in possession of the land title to which is sought to be quieted, that they are cultivating it and have fenced it, and the answer sets up title, possession, and the right to possession in the defendants, the plaintiff has a plain, adequate, and complete remedy at law in ejectment, and the suit to quiet title cannot be maintained.          P. 585

2. In a suit to quiet title, where the complaint alleges defendants are in possession of the land title to which is sought to be quieted, that they are cultivating it and have fenced it, and the answer sets up title, possession, and the right to possession in the defendants, they, the defendants, have a constitutional right to trial by jury, and the court is without jurisdiction to try the case as a suit in equity.          P. 586

3. A court of equity cannot, under its general powers, take jurisdiction in a suit to quiet title brought by one plaintiff against numerous defendants to prevent multiplicity of suits, when the defendants have nothing in common except their source of color of title, and each defendant has a distinct, different, and separate defense.          P. 590

4. Where plaintiffs in a partition suit, or a suit to quiet title, have knowledge or the means of knowledge as to persons in actual adverse possession of the lands to be partitioned, or the title to which is sought to be quieted, such persons cannot be bound by a decree in the partition suit or suit to quiet title by service by publication under the name of "unknown owners." They are entitled to personal service under such circumstances. Priest et al. v. Las Vegas, 16 N. M. 692, 120 Pac. 894, and La Cueva Ranch Co. v. Rodriguez, 17 N. M. 256, 134 Pac. 228, followed.          P. 593

Appeal from District Court, Santa Fe County; Abbott, Judge.

Suit by Benjamin F. Pankey against Antonio Ortiz and others. Decree for plaintiff, and defendants appeal. Reversed.

FRANK W. CLANCY, of Santa Fe, for appellants.

The court was without jurisdiction to try this case as it did.

Security Co. v. Bank, 164 Pac. 829, 830; Ely v. N. M. & Ariz. R. R. Co. 129 U. S., 291; Holland v. Challen, 110 U. S. 15, 25; Scott v. Neely, 140 U. S., 106, 115; Frost v. Spitley, 121 U. S., 552-557; Whitehead vé Shattuck, 138 U. S., 146, 150, et seq.; More v. Steinbach, 127 U. S., 70; Donahue v. Meister, 88 Cal., 121, 22 Am. St. 283; Hammer v. Mining Co., 130 U. S., 291, 295, 6.

That any such substituted service of process by publication must be made in strict compliance with the statute authorizing it, is shown by the following authorities:

Allen v. Smith, 25 Ark. 495; Guise v. Early, 72 Ia. 285; Ware v. Easton, 46 Minn. 180; Kirkland v. Express Co., 57 Miss. 316, 319; Read v. Gregory, 46 Miss., 740, 742; State v. Staley, 76 Mo., 158; Davis v. Montgomery, 205 Mo. 158; Piser v. Lockwood, 30 Hun., 6; Denning v. Corwin, 11 Wend., 681, 654; Sanford v. White, 56, N. Y., 359-362; Hollingsworth v. Barbour, 4 Peters, 466, 472; Bloom v. Burdick, 1 Hill, 130, 141-2; Webster v. Reid, 11 How. 460; 32 Cyc. 467.

The supreme court of the United States has distinctly held, while announcing the general rule against repeated litigation between the same parties in regard to the same subject of controversy, that there is an admitted exception in cases where, by reason of something done by the sucessful party to a suit, there was in fact no adversary trial or decision of the case, as where the unsucessful party has been prevented from exhibiting fully his case by fraud or deception practiced on him by his opponent, as by keeping him away from court, a false promise or a compromise or where

a defendant never had knowledge of the suit, being kept in ignorance by the acts of plaintiff, and that under such circumstances a new suit may be sustained to annul the former judgment.

U. S. v. Throckmorton, 98 U. S. 61, 65-6.

Thompson v. Whitman, 18 Wallace, 457, 466 to 469; Webster v. Reid, 11 How. 437, 459-460; Pacific R. R. v. M. P. R'y., 111 U. S., 505, 520.

Partition decree is a mulity as to appellants.

Rodriguez v. Ranch Co. 17 N. M. 246.

The court has asked council in this case to submit briefs upon question formulated as follows:

"Do the courts in this state, under their general equity jurisdiction, acquire jurisdiction to hear a cause on the equity side of the court, upon the principle that equity will take jurisdiction to prevent a multiplicity of suits, where there is one plaintiff who brings a suit against many defendants claiming title to a certain piece of real estate in which all of the parties defendant are concerned, and in which each defendant claims the origin of his right through a source common to each of his co-defendants, although each defendant claims a separate and distinct portion of the real estate so claimed by the plaintiff?"

The answer should be in the negative.

Waddingham v. Robledo, 6 N. M. 347, 376-379; Pomeroy Eq. Jur. Sec. 245, 268, 269, 251 1-2; Illinois Steel Co. v. Schroeder, 133 Wis. 561, 126 Am. S. R. 977; Hale v. Allison, 188 U. S. 56, 78; Tribbette v. Ill. C. R. Co. 19 L. R. A. 660; 10 R. C. L. 282-287; 14 L. R. A. (N. S.) 239.

CATRON & CATRON, of Santa Fe, for appellee.

The pleadings exhibit a suit to quiet title, of which the trial court had jurisdiction.

Section 4388, Code 1915.

Opposing council is correct in his assertion that if this is an action in ejectment that defendants are clearly entitled to a jury trial, but it is equally true that if

the suit is simply a suit to quiet title then the defendants are not entitled to a jury trial.

Sec. 4394, a portion of the Act relating to suits to quiet title provides:

"The action contemplated by this article shall be conducted as other actions, by equitable proceedings under the rules of chancery."

We deem it unnecessary to discuss the authorities cited by appellant on page 23 of his brief, all of which are cited, as we take it, for the purpose of showing that where the defendant is in possession of real estate and a suit is brought involving the right of possession, that the defendant is entitled to a jury trial. The principles established by these authorities go to the following extent and no further: First, that if the nature of the action is to obtain possession of real estate which is being possessed and held by the defendants, the only remedy is ejectment and the right of jury trial exists as ejectment is a common law action. Second, that if a person brings a suit to quiet title under the feneral equity practice independent of statute, then he must allege and prove both title and possession, otherwise his bill will be dismissed, and Third, that where there is a statutory action of suit to quiet title independent of the general equity suit to quiet title or remove cloud from title, that the foregoing rules do not apply and the trial in the statutory suit to quiet title is conducted in the manner prescribed by the statute.

Inasmuch as the case of Stanton vs. Catron, 8 N. M. 355-368, has clearly passed upon the statute in question as well as construed many of the authorities cited by appellant we will content ourselves by citing the court to the foregoing decision. Before entering upon a discussion of the foregoing case, however, we wish to call attention to the fact that Sec. 4387 is identical with Sec. 2214 of the 1884 Codification; Sec. 4388 of the 1915 Codification is the same as Sec. 2215 of the 1884 Codification and Sec. 4394 of the 1915 Codification is the same as Sec. 2217 of the 1884 Codification.

On page 368 Id. in speaking of Sec. 2214 the Supreme Court of New Mexico said:

"Under this section any person having or claiming any interest in real property, whether in or out of possession, may bring his bill to determine and quiet the title against any person claiming title thereto. Under the general equity practice, a· bill to·quiet the title to real estate could not be entertained independently of the statute, except upon the allegation and proof of both title and possession in the plaintiff."

Suit to quiet title may be brought by one not in possession.

Ely v. U. S. 129, U. S. 291.

In addition to the authorities herein above cited, we cite the court to the following decisions which discuss and pass upon the doctrines announced in the case of Ely vs. N. M. and Ariz. Ry. Co., 129 U. S. 291:

Parleys Park Mining Co. vs. Kerr, 130 U. S. 260; Union Milling & Mining Co. vs. Warren, 82 Fed. 521; Cameron vs. United States, 148 U. S. 305; Wall vs Magnes, 17 Colo. 479; Anter vs. Conlon, 22 Colo. 150; Zumwalt vs. Madden, 23 Ore. 125; Glassman vs. O'Donnell, 6 Utah 451; Watron vs. Slever, 21 Wash. S. Rep. 621; Ruff vs. Simmons, 65 Cal. 227; Stathen vs. Durey, 11 Pac. 606; Hesser vs. Miller, 19 Pac. 375; Railroad Co. vs. Oyler, 60 Ind. 269; Triltipo vs. Morgan, 99 Ind. 269.

As to the right to a trial by jury see:

Article 11, Sec. 12, State Const.; 18 Stats. Large, 27; Territorial Organic Act, Sec. 10; Walker v. So. Pac. R. Co. 165 U. S. 592; Whitehead vs. Shattuck, 138 U. S. 146.

The trial court had equity jurisdiction of this case to prevent a multiplicity of suits.

1 Pom. Eq. Jur. (4th Ed.) Sections 243 to 275.

REPLY BRIEF OF APPELLANTS.

Appellee's counsel argue at some length that there is no constitutional guarantee of the preservation of the

right of trial by jury applicable to this case because our state constitution, containing such a provision, became effective only upon our admission to statehood, which was in 1912, while this suit was begun in 1909, at which time no such constitutional provision was in force in New Mexico.

This is surprising in view of section 1891 of the U. S. Revised Statutes, and of the decision of our supreme court in the case of Territory vs. Ortiz, 8 N. M. 154, 157.

It seems unnecessary to say more, but the attention of the court is invited to Savings & Loan Ass'n. vs. Alturas County 65 Fed. 677, 681.

The object of the common law action of ejectment was to obtain an adjudication of this question of the right of possession as will be seen by reference to the statement on page 13 Volume 15 of Cyc., and by reference to our statute on the subject of ejectment it will be seen that our statutory action of ejectment is for that very purpose. It is a mere juggling with words to say that a suit under section 4388 of the Codification is a mere suit to quiet title and not to determine the right of possession to the real estate involved because the necessary consequence of the judgment in such a suit is to determine the right of possession, and that being so, in any case where the defendant is in actual possession as the pleadings and evidence show in the present case, the constitutional guarantee as to the preservation of the right of trial by jury is clearly applicable. The legislature of California in enacting a statute similar to ours distinctly recognized this fact and added a provision that if plaintiff prevailed he might have a right for the possession of the premises against the defendant, but the courts distinctly recognize the right to a jury trial if the defendant's claim supports any issue which should be tried by a jury.

Landregan v. Peppin, 29 Pac. 771, 772; People v. Center, 6 Pac. 481, 487; 2 Pomeroy's Eq. Rem. 743.

OPINION OF THE COURT.

Raynolds, J. This is a suit in equity begun May 1, 1909, by the plaintiff, Pankey, to quiet title and to ob-

tain an injunction against the defendants restraining them from trespassing on a tract of land known as the Cadillal, alleged to be within the Eaton or San Cristobal grant, of which plaintiff claims to be the owner.

The complaint sets up that the defendants during the year 1908 erected a fence upon the Cadillal tract and are now cultivating the soil of the said tract without permission of the plaintiff and are preventing the plaintiff from farming the same, that defendants intend to continue cultivating the soil of said tract and to keep the plaintiff out of possession of his said farming land, and prays that defendants be enjoined and that the title be quieted in plaintiff. A temporary injunction was issued but was afterwards dissolved upon motion of defendants supported by affidavits. Thereafter a demurrer to the complaint was filed which raises the jurisdictional question that the complaint does not show that plaintiff or any one under whom he claimed has had possession of the lands within the Cadillal tract, but does show that defendants are in actual possession of the land, and that the plaintiff is not entitled to any equitable relief until he establishes his title by an action at law. The demurrer was overruled by the court, and the action is assigned as error.

The defendants then filed an answer alleging that the Cadillal tract is outside the lands of the Eaton grant, lying to the west thereof, and avers that the fence mentioned in the complaint was not erected in 1908, as stated in complaint, but at some time in the year 1884, shortly after the enactment of a statute which became a law April 2, 1884. The answer further alleges that the fence has been kept up, maintained, and repaired down to the present time. The answer admits that the defendants are engaged in cultivating the soil of portions of the Cadillal without permission of the plaintiff, and that they intend, as they have the lawful right to do, to continue such cultivating of the land. The answer further alleges that each of the defendants is the owner of one or more pieces within the Cadillal of which he and his ancestors

and predecessors in title have had open, notorious, exclusive, adverse possession, hostile to the world ever since the year 1846, steadily and continuously using the same from year to year for agricultural and graz-.ing purposes, and that their said adverse possession was an actual and visible appropriation of land commenced and continued in good faith under color of title and claim of right inconsistent with and hostile to the claim of any other person, of which fact plaintiff had notice and knowledge at or before the time of his purchase of any interest in the said Eaton grant, and further that the chain of title of each defendant is different and independent from the chain of title to the pieces of land belonging to any of the other defendants, and that each is entiled to a separate trial by jury before he can be lawfully dispossessed of his land within the Cadillal tract.

The complaint having set up a deraignment of title through a judgment and decree of the district court of Bernalillo county entered on November 2, 1903, which adjudicated the title of the Eaton grant in the said Thomas B. Catron, Saron N. Laughlin, and other minor holders, the answer alleges that said decree is without force or effect so far as these defendants are concerned, as the allegations of the complaint do not in any way connect these defendants or any of them with the said cause, and they further say that they were not, nor were any of them, parties to said cause. To the answer of the defendants plaintiff filed a reply alleging that in 1903 said lands were sold by partition decree as originally pleaded in the complaint, and that the defendants and their ancestors were designated as unknown heirs of two named persons deceased, as the unknown owners of the Eaton grant, and unknown claimants of interest adverse to Thomas B. Catron and Nicholas Pino, who were the plaintiffs in the partition suit. Defendants moved to strike out portions of the reply, which was denied by the court, and that action is assigned as errorr.

On April 20, 1915, there was filed by the defendants a protest against the trial of the cause in its present form, as such trial would deprive them of their right to trial by jury. When the case came on for trial before the court, the defendants renewed their objection to any trial by the court on the ground that the case involved the recovery of possession of real estate, which the pleadings showed to be in the possession of the defendants. This objection was disregarded by the court.

At the conclusion of the taking of testimony defendants moved the court to dismiss the case on the ground that the evidence showed that it was instituted for the purpose of depriving the defendants of the possession and of rights of possession to different portions of the Cadillal, as to which each defendant has a right to a trial by jury. The record does not show any distinct ruling on this motion, but the court evidently ignored it.

Defendants applied to the court to make findings of fact and conclusions of law, which application was denied. Defendants then presented objections to the final decree proposed by the plaintiff, and these objections were overruled. The court then entered a final decree by which the title of the plaintiff to the Cadillal was established and quieted against the adverse claim of defendants. From this decree the defendants have appealed to this court, and have assigned among others, the following errors:

1. The district court erred in disregarding the protest of defendants against any trial of the cause in its present form by the court, and in forcing defendants to trial, thereby depriving them and each of them of a trial by jury, to which they were each entitled.

2. The district court erred in disregarding the objection of the defendants to any trial by the court made just before the beginning of said trial, claiming that each defendant was entitled to his trial by jury in this

cause, which involves the recovery of the possession of real estate which the pleadings show to be in the possession of the defendants.

3. The district court erred in disregarding the motion by defendants, made after the conclusion of the taking of testimony and before any findings or decree were made by the court, to dismiss the said cause for the reason that the evidence showed that it was instituted for the purpose of depriving defendants and each one of them of the possession, and of his right to the possession of different portions of the tract known as the Cadillal, each of said defendants holding possession of different portions of said tract by a different chain of title from any of the other defendants, and therefore each defendant had a constitutional right to a separate and independent trial by jury before his right to the possession of the land could be determined.

4. The district court erred in denying the motion of defendants to strike out from the evidence parts of the record in the case of Catron et al. v. Laughlin et al. for reasons set forth in said motion.

The complaint alleges that the defendants are in possession of the land title to which is sought to be quieted; that they have fenced it and are cultivating it. The defendants demurred to the complaint, and after the demurrer was overruled and they had answered claiming title and right to possession, they objected to the trial of the case on the ground that it was an attempt to deprive them of their possession and to try their title by a suit in equity, that the action was properly one at law in ejectment, and that they had a constituional right to a trial by jury. This objection was raised at every stage of the proceedings.

The statute under which this suit to quiet title is brought is as follows:

"An action to determine and quiet the title of real property may be brought by any one having or claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto." Code 1915, §4387.

Our statutes in ejectment are found in sections 4360 to 4378, inclusive, Code 1915. Section 4360 provides:

"The action of ejectment may be maintained in all cases where the plaintiff is legally entitled to the possession of the premises."

Section 4362:

"The action shall be prosecuted in the real names of the parties, and shall be brought against the tenant in possession, or against the person under whom such tenant holds or claims possession. Any person claiming such premises may, on motion, be made a defendant."

Section 4363:

"It shall be sufficient for the plaintiff to declare in his complaint that on some day, named therein, he was entitled to the possession of the premises, describing them; and that the defendant, on a day named in the complaint, afterwards entered into such premises, and unlawfully withheld from the plaintiff the possession thereof, to his damage for any sum he may name."

The right to trial by jury upon which appellants rely is found in the Bill of Rights, article 2 of our Constitution, and is as follows:

"Sec. 12. The right of trial by jury as it has heretofore existed, shall be secured to all and remain inviolate."

Section 17 of the Organic Act establishing the territory of New Mexico (9 Stat. 452) is as follows:

"That the Constitution and all laws of the United States which are not locally inapplicable shall have the same force and effect within the said territory of New Mexico as elsewhere within the United States."

The appellee urges that he does not seek to obtain possession of the premises, but only to quiet title against these defendants, and that subsequently he might bring a suit in ejectment to obtain possession of the land, and it was probably upon this theory that the trial court proceeded with the case.

[1] It is a well-established principle that equity will not take jurisdiction where the remedy at law is plain, adequate, and complete.

"In all cases where the plaintiff holds or claims to have a purely legal estate in land, and simply seeks to have his title adjudicated upon, or to recover possession against an adverse claimant who also relies upon an alleged title, there being no equitable feature of fraud, mistake, or otherwise, calling for the application of the equitable doctrines or the granting of peculiar equitable reliefs, the remedy at law is adequate, and the concurrent jurisdiction of equity does not exist. A suit in equity, under its concurrent jurisdiction, will not be maintained to take the place of the action of ejectment, and to try adverse claims and titles to land which are wholly legal, and to award the relief of a recovery of possession." Pom. Eq. Jur. (4th Ed.) vol. 1, par. 177.

"When the estate or interest to be protected is equitable, the jurisdiction to quiet title or remove cloud should be exercised whether plaintiff is in or out of possession; but, when the estate or interest is legal in its nature, the exercise of the jurisdiction of equity to quiet a title or to remove a cloud therefrom depends upon the adequacy of legal remedies." 32 Cyc. "Quieting Title," p. 1308, and cases cited.

"The remedy by ejectment is generally regarded as plain, adequate, and complete, and a party will ordinarily be left to that remedy when it exists. Thus, where the title is purely a legal one, and defendant is in possession, the remedy is regarded as plain, adequate, and complete." 32 Cyc. "Quieting Title," p. 1312, and cases cited.

[2] Where the jurisdiction of equity has been extended by statute, and where there is some well-known ground of equity jurisdiction, and there is no constitutional prohibition, courts of equity frequently assume jurisdiction. As is said in Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 Fed. 9, at page 10, 50 C. C. A. 84, at page 86 (61 L. R. A. 230):

"The general disposition of the courts is to retain jurisdiction of any subject where there is any plausible ground of equitable cognizance (Waite v. O'Neil [C. C.] 72 Fed. 348, 356; Randolph v. Allen, 19 C. C. A. 353, 73 Fed. 23, 30; Grather v. Wright, 23 C. C. A. 498, 75 Fed. 742-749; Greely v. Lowe, 155 U. S. 58, 15 Sup. Ct. 24, 39 L. Ed. 69), especially where such jurisdiction would not infringe upon the constitutional rights of the parties to a trial by jury."

"In several states equitable jurisdiction has been enlarged by statute so as to permit actions to quiet title, or remove cloud thereon, to be maintained even where plaintiff is not in possession. If these statutes be regarded as giving an absolute right to the equitable remedy where an adequate remedy at law exists, the effect is to deprive the party in possession of the right to trial by jury, and they are therefore unconstitutional." 32 Cyc. "Quieting Title," p. 1311.

See, also, Tabor v. Cook, 15 Mich. 322; Newman v. Duane, 89 Cal. 597, 27 Pac. 66.

Where the jury has been waived expressly or by action of the parties, a court of equity has taken jurisdiction of the cause (Green v. Turner [C. C.] 98 Fed. 758; Hyde v. Redding, 74 Cal. 493, 16 Pac. 380); or where the defendant admits the plaintiff is in possession (Angus v. Carven, 132 Cal. 691, 64 Pac. 1091).

In another class of cases where neither plaintiff nor defendant is in possession and the question is one merely for the determination of the legal title, courts of equity have assumed and retained jurisdiction to quiet title. Baca v. Anaya, 14 N. M. 382, 94 Pac. 1017, 20 Ann. Cas. 77; More v. Steinbach, 127 U. S. 70, 8 Sup. Ct. 1067, 32 L. Ed. 51; Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52. Or again in a similar class of cases where the land is wild or vacant, courts have assumed jurisdiction to quiet title. Gage v. Abbott, 99 Ill. 366; McGrath v. Norcross, 70 N. J. Eq. 364, 61 Atl. 727; Moore v. Shofner, 40 Or. 488, 67 Pac. 511; Gordan v. Jackson (C. C.) 72 Fed. 86, where it is said:

"Where lands were wild or unoccupied, it had been held that the federal courts, in chancery, sitting in states that had adopted such statutes, could entertain suits to quiet title in the rightful owner. Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495. But in such cases a court of law can afford the owner no remedy, and therefore there is no right to a trial by jury, since such right existed only in cases at law. It is therefore no violation of the Constitution or statute to bring such suits in equity. But where lands are unlawfully occupied, the owner can sue the occupant at law, and the consequent right of trial by jury exists. Hence the difference from the case where no one is in possession or sued at law. In Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, the effect of a similar Iowa statute upon the practice of the federal courts of that state was well considered and clearly reasoned in an opinion by Justice Field. It is well to note that he had written the opinion of the court in Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, which is sometimes thought to warrant suits like this. But he clearly indicates the distinction between the case where no one is in possession, and a court of law can afford no remedy, and that where the defendant is in possession, and the plaintiff may sue him at law, and obtain adequate and complete relief."

On the other hand, where the defendant is in possession, claiming title, federal courts have uniformly refused to grant the relief asked in a suit to quiet title or in a similar action.

"This court has held in a multitude of cases that, where the laws of a particular state gave a remedy in equity, as, for instance, a bill by a party in or out of possession, to quiet title to lands, such remedy would be enforced in the federal courts, if it did not infringe upon the constitutional rights of the parties to a trial by jury. Clark v. Smith, 13 Pet. 195; Holland v. Challen, 110 U. S. 15; Reynolds v. Crawfordsville Bank, 112 U. S. 405; Chapman v. Brewer, 114 U. S. 158, 171; Cummings v. National Bank, 101 U. S. 153, 157; United States v. Landrum, 118 U. S. 81; More v. Steinbach, 127 U. S. 70." Greely v. Low, 155 U. S. 58, at page 75, 15 Sup. Ct 24, at page 28 (39 L. Ed. 69).

See Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873; Gordan v. Jackson (C. C.) 72 Fed. 86; Gombert v. Lyon (C. C.) 80 Fed. 305; Erskine v. Forest Oil Co. (C. C.) 80 Fed. 583; Blythe v. Hinckley (C. C.) 84 Fed. 228; Davidson v. Calkins (C. C.) 92 Fed. 230; Cosmos Exploration Co. v. Gray Eagle Oil Co., 112 Fed. 4, 50 (C. C.) A. 69, 61 L. R. A. 230; Hanley v. Kansas & T. Coal Co. (C. C.) 110 Fed. 62.

"Where, however, the defendant is in possession, it is held in most jurisdictions that he is entitled to a jury trial, at least where the complainant seeks restitution or possession as a part of his relief." Pomeroy, Eq. Rem. vol. 2, par. 736, and cases cited.

See, also, Pom. Eq. Jur. vol. 1, § 293, pp. 503 and 504, and cases cited; Donahue v. Meister, 88 Cal. 121, 25 Pac. 1096, 22 Am. St. Rep. 283.

The same rule is also applied in state courts. Where the defendant is in possession, the reason for the rule is placed upon two grounds; i. e., that the remedy in ejectment at law is adequate, and that the parties have a constitutional right to trial by jury. This rule seems to be uniform throughout the United States when the questions of the adequacy of the legal remedy and the constitutional right to jury trial have been properly raised and are before the court for adjudication. See Whitehouse v. Jones, 60 W. Va. 680, 55 S. E. 730, 12

L. R. A. (N. S.) 49, and extended note thereto, page 67; Hughes v. Hannah et al., 39 Fla. 365, at page 373, 22 South. 613; McCoy v. Johnson, 70 Md. 490, 17 Atl. 387; Tabor v. Cook, 15 Mich. 322.

In Carlson v. Sullivan, 146 Fed. 476, at page 479, 77 C. C. A. 32, at page 35, it is said:

"We are of the opinion that, under the provisions of the Seventh Amendment to the Constitution of the United States, a party in possession of real estate, claiming the whole title, is entitled to a right of trial by jury, and that this rule is settled by the decisions of the Supreme Court. Whitehead v. Shattuck, 138 U. S. 146, 151, 11 Sup. Ct. 276, 34 L. Ed. 873; Scott v. Neely, 140 U. S. 106, 109, 11 Sup. Ct. 712, 35 L. Ed. 358; Lacassagne v. Chapuis, 144 U. S. 119, 12 Sup. Ct. 659, 36 L. Ed. 368. It is contended by appellants, however, that the right of trial by jury is not a fundamental right, and that the Seventh Amendment to the Constitution has no application to the territorial legislation, nor to the jurisdiction of the courts thereunder, and that the federal courts will not decline equity jurisdiction simply because legal questions are involved, when the action is brought under a state or territorial statute, and not under the general equity powers of the court; and numerous authorities are cited in support of these propositions.

"That the Constitution of the United States applied to Alaska is settled by the reasoning and decision of the court in Rassmussen v. United States, 197 U. S. 516, 525, 25 Sup. Ct. 514, 49 L. Ed. 862, et seq."

"If the defendant be in possession, the bill may not be maintained; for the complainant has a plain, adequate, and complete remedy at law by suit in ejectment. Cases last cited. It follows, therefore, that a bill in equity to quiet title may, even under the enlarged jurisdiction conferred by the New Mexico statute, be maintained only (1) where the complainant is in possession, or (2) where neither plaintiff nor defendant is in possession; and a complaint framed under the New Mexico statute must therefore allege affirmatively either one or the other of these conditions, in order to show that complainant is without remedy at law. A failure so to do renders the bill bad on demurrer. So. Pac. Co. v. Goodrich (C. C.) 57 Fed. 879 (opinion by Mr. Justice McKenna); U. S. Mining Co. v. Lawson (C. C.) 115 Fed. 1005. See, also Boston Co. v. Montana Co., 189 U. S. 632, 23 Sup. Ct. 434, 47 L. Ed. 626." Baum v. Longwell (D. C.) 200 Fed. 450, at page 451.

See also, Kennon v. Gilmer, 131 U. S. 22-28, 9 Sup. Ct. 696, 33 L. Ed. 110; volume 10, Ruling Case Law, Equity, §§ 27-30.

It will thus be seen that a suit to quiet title cannot be maintained in this case for two reasons: First, the plaintiff has a plain, speedy, and adequate remedy at law in ejectment; and, second, the defendants have a constitutional right to trial by jury of which they cannot be deprived by a suit of this nature. This right is given them by the Seventh Amendment to the Constitution of the United States. It was extended to the territory of New Mexico by section 17 of the Organic Act and secured to these defendants by the language of section 12, art. 2 of the state Constitution, above quoted. The court erred therefore in overruling defendants' demurrer and proceeding with the trial of the case over the defendants' objection.

[3] The remedy in ejectment is generally regarded as plain, adequate, and complete, and where the defendant is in possession and the title is purely a legal one, the party will ordinarily be left to that remedy when it exists. 32 Cyc. Quieting Title, p. 1312, cited supra. It is argued by appellee that, although the remedy by ejectment exists in which a jury trial is guaranteed by the Constitution, such remedy is not adequate, and that the court of equity may and could, under its general equity powers, hear and determine a cause in order to prevent multiplicity of suits, where one plaintiff begins the action against many defendants, each of whom claims a common origin of right to the property in question. This contention is without merit here, as a case in which multiplicity of suits is avoided by the intervention of equity is not made out by the pleadings. The appellants in their answer claim separate interest in the property by adverse possession under color of title. The color of title is the only element their defenses have in common, and a trial of one case would not settle and determine any fact common to all, except the question of the color of title, under which they all claim. As to their rights and titles acquired by adverse possession, each case would rest upon different facts, and different conclusions

could be drawn therefrom. This distinction and the limitation on the power of a court of equity to take jurisdiction to avoid multiplicity of suits is clearly set forth in the fourth edition of Pomeroy's Equity Jurisprudence, par. 251½, where the editor of the fourth edition, John Norton Pomeroy, Jr., explains and limits in said paragraph the principle laid down in the third edition of said work in paragraphs 243 to 275, inclusive:

"The equity suit must result in a simplification or consolidation of the issues; if, after the numerous parties are joined, there still remain separate issues to be tried between each of them and the single defendant or plaintiff, nothing has been gained by the court of equity's assuming jurisdiction. In such a case, 'While the bill has only one number upon the docket and calls itself a single proceeding, it is in reality a bundle of separate suits, each of which is no doubt similar in character to the others.' " Pom. Eq. Jur. (4th Ed.) par. 251½.

And this principle is recognized by the Supreme Court of Vermont in the case of International Paper Co. v. Bellows Falls Canal Co., 88 Vt. 93, 90 Atl. 943.

The reason for this limiting principle is well stated in the above quotation from section 251½, Pomeroy, and this limitation is directly applicable to the suit at bar. Some courts, without recognizing the limitation above stated, have carried the doctrine very far indeed. Many cases will be found collected in notes to the case of Illinois Steel Co. v. Schroeder, reported and annotated in 14 L. R. A. (N. S.) 239, and 126 Am. St. Rep. 977. The great weight of judicial decisions, however, recognize and adhere to the limiting principle further developed by the editor of Pomeroy, fourth edition, and on principle this must be sound.

In Peniston v. Press Brick Co., 234 Mo. 698, 138 S. W. 532, will be found a very able and learned discussion of the question by Judge Lamm of the Missouri Supreme Court, and his views met the concurrence of the entire court. In that case plaintiff sought to join 475 defendants in a suit to quiet title and for the posession of real estate in a proceeding almost identical with that now under consideration. In this case there

was a common source of color of title as to all the 475 defendants, but each claimed title by adverse possession. After referring to a former decision of the Missouri Supreme Court, the court said:

"The Chaput Case, while directly riding off on a question of multifariousness, did not neglect to consider the equitable doctrine of avoiding a multiplicity of suits pressed upon us in this case. To the contrary, that question was involved there, and the authorities cited in that case dealt with that matter as did the case itself.

"Counsel for defendants cite us to additional authorities strongly fortifying the Chaput Case, viz.: Buchanan County v. Adkins, 175 Fed. 692; Slosson v. McNulty et al., 125 Ala. 124; Tompkins v. Craig, 93 Fed. 885; Lehigh Valley Railroad v. McFarland, 30 N. J. Eq. 135; Webb v. Parks, 110 Ga. 639; Portwood v. Huntress, 113 Ga. loc. cit. 819; Scott v. McFarland, 70 Fed. 280; O'Brien v. Fitzgerald, 39 N. Y. Supp. loc. cit. 709; 1 Pomeroy's Equity (3d Ed.) § 251½. The guiding principle announced in those cases and authorities is that there must be such common relation, common interest, or common question involved that one proceeding in equity may really avail to prevent a multiplicity of suits and permit a general bill of peace. Where that principle does not obtain there is no real avoidance of a multiplicity of suits, and the reason of the rule failing, the rule cannot be invoked.

"In the case at bar a multiplicity of suits is avoided only in name and at the start, not in reality and at the end. Here each defendant stands on his own title under the statutes of limitations. There is no common interest, or common relationship, or common question anent the subject-matter decisive of the controversy. When a jury decides for or against one defendant, the title of another is not affected a whit, but remains quite open, depending on the facts of his individual case—that is, each tub stands on its own bottom; and we can see no reason why these plaintiffs should be allowed to tie a whole population into a composite and blanket lawsuit, when no sensible benefit arises from it, except an avoidance to plaintiffs of the manual labor of bringing a separate suit for each tract against the claimant of that tract, and the further relief to them of being eased of the burden of the preliminary costs of instituting so many actions.

"The cases cited by counsel for plaintiffs from our own reports (of which Tucker v. Tucker, 29 Mo. 350, is an example), when carefully analyzed and discriminately applied to the concrete facts in judgment, do not run counter to Chaput v. Bock.

"(c) But, it is argued, the instant case differs in material facts from the Chaput Case, and therefore should not be ruled by it. We see no material difference in vital features.

"(1) True the reply filed in the instant case differs from that filed in the Chaput Case in that it set up a common source of title, viz. Solomon P. Sublette, while in the Chaput Case there was no common source of title. But that fact does not differentiate one case from the other on principle. A common source of title agreed to or shown to exist merely marks that link in the chain of title at which the trial of title between adverse claimants may begin, and if on the motion for judgment on the pleadings it be assumed there was a common source of title, viz. Solomon Sublette, yet the issues raised by the pleadings relating to the statute of limitations remain precisely the same in both cases. The issues entitled defendants to a severance and make necessary 475 trials, thereby making the reasoning of the Chaput Case conclusive in the case at bar, unless something else distinguishes the case."

In Hale v. Allinson, 188 U. S. 56, 23 Sup. Ct. 244, 47 L. Ed. 380, the court points out that the assumption of jurisdiction to prevent a multiplicity of suits might in some cases do so as a matter of form rather than of substance, and, while leading to inconvenience, it would constitute good ground for denying jurisdiction. Many other cases will be found in the notes to the annotated case above referred to. Very few cases, if any, go as far as the appellee would have this court go in the present instance in upholding the equity jurisdiction of the court to avoid a multiplicity of suits.

[4] It is urged by the appellee that appellants are estopped by the decree of partition in the case of Catron et al. v. Laughlin et al., No. 4849, Bernalillo county, under which decree plaintiff's grantor claims the title to the land involved in this suit. The above-named case was a suit in partition in which the appellants in the present case were made parties under the name of "unknown claimants" of interest adverse to the plaintiff in the partition suit, or the "heirs of unknown claimants." The appellants here were at all times in open, notorious, and adverse possession of the land which they now claim, and it is evident from the record the plaintiff's in the partition proceedings had knowledge, or the means of knowledge, of their names and residences. Under Rodriquez v. La Cueva Ranch Co., 17 N. M. 246, 134 Pac. 228, following Priest et al. v. Las

Vegas, 16 N. M. 692, 120 Pac. 894, such defendants in a partition proceeding, or suit to quiet title, could not be made parties to such suit under the name of "unknown owners or claimants," and service by publication obtained against them would be invalid, and they would not be bound by a decree in such a case. As is said in Rodriquez v. La Cueva Ranch Co., supra:

"Plaintiffs in the bill for partition allege that they were informed that various other persons made claim to portions of the grant, but that who they were or what their names were plaintiffs were unable to state, not knowing same. If this allegation referred to appellees or their predecessors in interest, it certainly was insufficient. They were at the time in the open notorious possession of the lands now in dispute, and their names could have been easily ascertained. Can it be said, then, that appellees were unknown claimants within the meaning of the partition statute so as to be affected by the published notice? We think not."

Next after the foregoing quotation, the court sets out sections 3180 and 3181 of the Compiled Laws of 1897, under which the partition proceedings were had, and then says:

"It is apparent from a reading of the foregoing sections, it seems to us, that it was not the intention of the legislature to provide for the making of parties by the name of unknown owners, and for the service of process upon them by publication when they in fact were in the open and notorious adverse possession of a part of the premises. The test seems to be pointed out in section 3180, that there must be some impediment so that the parties cannot be named before resort may be had to a procedure so well known to be ineffective to bring home notice to interested parties. In the partition proceedings the plaintiffs and defendants named were claiming to be the owners of the property and to have title to the same. They had the means, as indeed we believe it was their duty, to ascertain the names of all persons actually holding adverse possession of any of the property claimed which was the subject-matter of the litigation. And so we conclude that it was not the intention of the Legislature to allow the rights of claimants to land, situated as the appellees and their predecessors in title were, to be foreclosed of their rights by a proceeding in which they are not named, and in which the only service obtained upon them was by publication. To hold otherwise would be to say that the plaintiff in a partition proceeding may sit in his office, refrain from all inquiry as to the persons claiming any part of the estate sought to be partioned, pursue no sources of information of which he may be aware, and, because in fact he does not actually know the names of the adverse claimants to the estate sought to be

partition, he may proceed against them as unknown owners, and thereby deprive them effectually of all of their rights and property. Such we cannot believe was the intention of the Legislature."

There are other assignments of error, but we do not deem it necessary to consider them as the ones hereinbefore mentioned are controlling.

For the reasons above stated, the cause is reversed; and it is so ordered.

PARKER, J., concurs.

ROBERTS, C. J. (specially concurring). While I concur fully in the opinion written by Justice Raynolds, this case is of such vital importance to the owners of land grants within this state that I feel that it is but fair to them that I should set forth my conclusions, formed after a careful and painstaking research of the authorities, as to the right of a party to proceed by a suit in equity to quiet his tile to real estate against a defendant in posession of the real estate in controversy. In the present case the matter was first raised by a demurrer to the complaint. The demurrer was probably properly overruled at the time the ruling was made thereon. The complaint was in the ordinary form of a suit to quiet title, save that it alleged that the defendant was in possession of the real estate and demanded possession. The ruling on the demurrer could probably be sustained on the theory that in this state, under section. 4067, Code 1915, there is but one form of civil action, and the plaintiff may unite in the same complaint several causes of action, both legal and equitable. Kingston v. Walters, 14 N. M. 368, 93 Pac. 700. In that case the court said:

"In other words, under the reform system of pleadings which our Legislature has adopted, litigants are given the relief which the facts in the pleadings show them to be entitled to in one action, whether the relief is equitable, or legal, or both."

The complaint in this case stated a good cause of action in ejectment, and, treated as such, was sufficient

to have withstood the demurrer. I do not, however, attach any importance to the fact that the complaint, thus construed, was sufficient to withstand the demurrer, because appellee (plaintiff below) later on and before trial ¡stated in open court that he did not stand upon his right to possession of the premises; that the purpose of the action was to simply quiet his title to the real estate; that he waived any right to possession ·in the present action, and stood solely upon his demand for a right to equitable relief. Appellants (defendants below) demanded a jury trial at every stage of the case where such demand was proper, and this was refused by the court under the view that appellee was correct in his construction of the effect of the provisions of the Code relative to suits to quiet title. So that after all the controlling question in the case is as to the effect to be given sections 4387 and 4394, Code 1915.

The first section referred to is common to several of the states, and its intent is that any person owning real property, whether they are in possession or not, in which any other person claims an adverse title or interest, may bring an action against such person to determine the adverse claim and to quiet the plaintiff's title. "It extends to cases in which the plaintiff is out of possession and the defendant is in possession, and in which, at common law, the plaintiff might have maintained ejectment." Ely v. New Mexico, etc., R. R. Co., 129 U. S. 291, 9 Sup. Ct. 293, 32 L. Ed. 688. In the case just quoted the Supreme Court of the United States considered a similar statute enacted by the Legislature of the territory of Arizona. So far as I know, the courts all accept this view of similar statutes in all cases where the question has arisen.

Section 4394 reads as follows:

"The action contemplated by this article shall be conducted as other actions, by equitable proceedings under the rules of chancery."

This section, so far as I have been able to discover, is found only in Iowa, which state likewise has the

first section referred to. The Supreme Court of Iowa, in the case of Lees v. Whetmore, 58 Iowa, 170, 12 N. W. 238, held that under this statute a party out of possession of real property could maintain an action in equity to quiet title thereto against the person in possession, and might in such case include a prayer to recover possession, but the effect of the statute as a denial of the right to trial by jury was not discussed by the court. There is also a Mississippi Case, Wofford v. Bailey, 57 Miss. 239, which seemingly would uphold the validity of such a statute upon the theory that the party may quiet his title by equitable proceedings against a party in possession, and later bring an action at law in ejectment for the recovery of possession of the property. Neither court, however, gives any reason for the conclusion, and the writer of the opinion in each case was apparently satisfied with the simple declaration that such was the law. I am not familiar with the constitutional provisions of these two states relative to the right of trial by jury, but, if their provisions were similar to our own, these cases would have no persuasive influence, because no consideration was given to the question involved.

The two sections of our statute involved here were originally enacted by the Legislature in 1884 (Laws 1884, c. 6, §§ 1 and 4). The sections were re-enacted as subsections 273 and 276, c. 107, Laws 1907, and carried forward into the Code of 1915. The Code provisions on ejectment are set forth in the opinion written by Justice Raynolds, and need not be repeated here. Under this statute, while a plaintiff is not required to set up his title and may content himself by a simple allegation that he was on some day named in the complaint entitled to the possession of the premises, describing them, and that defendant on said day unlawfully withheld from the plaintiff possession, he may do so. In other words, in an action in ejectment, the parties may or may not at their election, under our statute, litigate the question of title, and the judgment in the ejectment suit under our statute, unlike the common-

law ejectment, would be res adjudicata as to the question actually litigated. If the parties chose only to litigate the right to possession, the judgment would be res adjudicata only as to that question on the date named.

If, however, they elected to adjudicate both title and right of possession, the judgment would be final as to both. Hence, under our statute the plaintiff may adjudicate the question of title in an action in ejectment. In ejectment, of course, the parties at common law were entitled to a trial by jury.

The state Constitution (article 2, § 12) provides:

"The right of trial by jury, as it has heretofore existed, shall be secured to all and remain inviolate."

This section operates to secure to parties litigant the right of trial by jury as such right existed in the territory at the time immediately prior to the adoption of the Constitution. We are therefore required to determine from congressional legislation the extent of such right. By the act of April 7, 1874 (18 Stat. 27, 9 Fed. Stat. Ann. p. 572), Congress, legislating for all the territories, declared that no party "shall be deprived of the right of trial by jury in cases cognizable at common law," and in passing upon the effect of this statute the Supreme Court of the United States, in the case of Walker v. So. Pac. Ry. Co., 165 U. S. 595, 17 Sup. Ct. 421, 41 L. Ed. 837, held that its effect was to secure all the rights of trial by jury as they existed at common law in all such territories. Under this act the validity of territorial legislation providing for a joinder of causes of action at law and in equity in the same complaint, all triable by the same court, was validated and approved by Congress. But, while doing so, and thus placing the territories in the same position as states which had adopted the Code system and had abolished the distinction between actions at law and in equity, Congress was careful to preserve to litigants in territorial courts the right of trial by jury as such right existed at common law.

It requires no argument to demonstrate that any territorial statute which runs counter to this congressional legislation would be invalid and of no force and effect. Section 1851, R. S. U. S. 1878 (U. S. Comp. St. § 3438). Consequently, if a party at common law in possession of real estate was entitled to a trial by jury in an action involving his title and right to possession of the property, he would be so entitled under territorial government, notwithstanding a statute authorizing a suit to quiet title against a person in possession by one out of possession and making the cause triable as a chancery case. Under the territorial government, of course, decisions of the Supreme Court of the United States were controlling. Therefore, in determining the question presented, recourse should be had to the decisions of that court. A few general observations might profitably be made before passing to a consideration of the decisions of the Supreme Court of the United States.

Equity jurisdiction of the chancery courts of England extend to two distinct kinds of bills of peace; the one brought for the purpose of establishing a general right between a single party and numerous persons claiming distinct and individual interests, and the other for the purpose of quieting a plaintiff's title to land against a single adverse claimant.

"In the first class the original jurisdiction to maintain 'bills of peace' or 'bills quia timet,' properly so called, will only be exercised where the claims of the numerous individuals have some community of interest in the subject-matter, or arise from a common title; but the jurisdiction has been enlarged so as to entertain analogous suits where the community of interest is in respect merely to the questions involved or the kind of relief demanded. In the second class the suit can be maintained by a party in possession against a single defendant ineffectually seeking to establish a legal title by repeated actions of ejectment. It is here necessary that the title of the complainant should be established by at least one successful trial at law before equity will entertain jurisdiction." Pom. Eq. Jur. p. 3304.

It is fundamental that a suit in equity will not be sustained in any case where a plain, adequate, and

complete remedy may be had at law. This rule was enacted into a statute by Congress (Judiciary Act of 1789, 1 Stat. 82, c. 20, § '16 [U. S. Comp. St. §1244]), but the Supreme Court of the United States in numerous cases has held that this statute was merely declaratory, and made no alteration whatever in the rules of equity on the subject of legal remedies, and was only expressive of the law which has governed proceedings in equity ever since their adoption in the courts of England. Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873.

In the case of Holland v. Challen, 110 U. S. 15, 3 Sup. Ct. 495, 28 L. Ed. 52, the Supreme Court of the United States had occasion to consider a statute of Nebraska relative to suits to quiet title. The statute there, as does ours, authorized the maintenance of such an action by plaintiff, whether in or out of possession against a defendant, whether in or out of possession. In that case the bill of complaint alleged that neither party was in possession; that the land was wild and unoccupied. The court sustained the right to sue in such a case in the Circuit Court of the United States in equity upon the theory that the statute enlarged the equity jurisdiction of the courts and did not intrench upon the right of either party to a trial by jury where defendant was not in possession. In the case will be found an exhaustive and able discussion of the bill of peace in the chancery courts of England and showing that there, in order to maintain such a suit, the plaintiff was always required to be in possession. But the court further shows that there is no invasion of any common-law right to trial by jury by reason of the enlargement of the jurisdiction of equity to entertain suits to quiet title where neither party is in possession.

Unlike the Code provision found in many of the states, the forms of action in civil cases are not abolished in the federal courts, and the jurisdiction of the federal courts in equity is indentical with the jurisdiction of the chancery courts of England at the time

of the Revolution, except as modified by the rules of
the federal courts and enlarged by statutes in a few
instances. Whenever a case is brought in the federal
court under the authority of a state statute, which is
to say a cause of action created by a state statute, as
an enlargement of an equitable right theretofore ex-
isting, the federal courts will enforce the right, pro-
vided the statute does not enlarge the fundamentals of
the chancery jurisdiction of such courts; that is to say,
whenever such a state statute enlarging the equitable
jurisdiction does not divest a party of the right to trial
by jury as the same existed at common law, the federal
court will enforce the right as enlarged. This, I think,
is fairly deducible from the case of Holland v. Challen,
supra.

I take it to be beyond dispute that it is competent
for the Legisature of a state, or for the Congress of the
United States, to enlarge the equity jurisdiction of the
courts of the state or of the United States; each legis-
laive body acting, of course, within its proper sphere.
Many statutes will be found both in the acts of Congress
and in the various states which accomplish this result.
It would serve no useful purpose to undertake to set
them out. A recent example in our own state will be
found in the statute referred to and considered in the
case of Dreyfus v. City of Socorro, 26 N. M. ..., 189
Pac. 878. These statutes are uniformly upheld so long
as they do not intrench upon the constitutional right of
trial by jury, or, as the controlling congressional act
applicable to territories provided, ''the right of trial by
jury as it existed at common law.''

To say that by statute you could give a court of
equity jurisdiction over the question of the title to real
estate, where the defendant was in possession, when
under the common law in all such cases ejectment was
the remedy and the right of trial by jury existed,
would be to affirm that by changing the name of the
remedy and investing a court of equity with jurisdiction
the Legislature could completely abolish the right of

trial by jury. Again, if that were true, it could be said with equal propriety that, where an adequate remedy at law existed under which the parties were entitled to a jury trial, the Legislature might nevertheless invest a court of equity with jurisdiction, and make such jurisdiction exclusive.

In Whitehead v. Shattuck, 138 U. S. 146, 11 Sup. Ct. 276, 34 L. Ed. 873, the plaintiff instituted a suit in equity in the Circuit Court of the United States for the Northern District of Iowa to quiet his title as trustee to certain real estate. The bill alleged that the plaintiff was not in possession, but that he was the owner of the real estate described, that the defendant was in possession, holding the same openly and adversely to him, and set forth the defendant's claim of title, and asked that plaintiff's title be quieted. Iowa had a statute identical with our own. Mr. Justice Field, speaking for the court, said:

"The Seventh Amendment of the Constitution of the United States declares that 'in suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved.' That provision would be defeated if an action at law could be tried by a court of equity, as in the latter court a jury can only be summoned at its discretion to ascertain special facts for its enlightenment. Lewis v. Cocks, 23 Wall. 466, 470; Killian v. Ebbinghous, 110 U. S. 568, 573; Buzard v. Houston, 119 U. S. 347, 351. And so it has been held by this court' that whenever a court of law is competent to take cognizance of a right, and has power to proceed to a judgment which affords a plain, adequate, and complete remedy, without the aid of a court of equity, the plaintiff must proceed at law, because the defendant has a constitutional right to a trial by jury.' Hipp v. Babin, 19 How. 271, 278.

"It would be difficult, and perhaps impossible, to state any general rule which would determine in all cases what should be deemed a suit in equity as distinguished from an action at law, for particular elements may enter into consideration which would take the matter from one court to the other; but this may be said, that, where an action is simply for the recovery and possession of specific real or personal property, or for the recovery of a money judgment, the action is one at law. An action for the recovery of real property, including damages for withholding it, has always been of that class. The right which in this case the plaintiff wishes to assert is his title to certain real property; the remedy which he wishes

to obtain is its possession and enjoyment; and in a contest over the title both parties have a constitutional right to call for a jury."

In the case of Wehrman v. Conklin, 155 U. S. 314, 15 Sup. Ct. 129, 39 L. Ed. 167, the court reviews many of the earlier cases decided under state statutes authorizing suits to quiet title. No useful purpose would be subserved by undertaking to digest each of these cases and set forth specific points decided. I believe a reading of the cases will show that a suit in equity could be filed in the Circuit Court of the United States, the jurisdictional requisites existing, to quiet title to real estate under a state statute enlarging the equity jurisdiction of courts in such cases as ours: (1) Where the plaintiff was in possession; (2.) where neither plaintiff nor defendant was in possession. But such court has consistently and always denied the right of a party to proceed in equity under such statutes or otherwise where the defendant was in possession, asserting title to the land. And this denial was put upon either one of two grounds: (1) Suit in equity would not lie where plaintiff had a plain, complete, and adequate remedy at law; and (2) that it was a denial of right of trial by jury in a suit at common law.

Thus it will be seen that in these cases the plaintiff was not denied access to the equity jurisdiction of the federal court because he was invoking a state statute, because in the case of Holland v. Challen, supra, and similar cases, his right to proceed in the federal court under an enlarged equity jurisdiction was upheld. The denial was by reason of the fact that the defendant was in possession and relief was refused because the case was not properly cognizable in equity and denied the defendant the right of trial by jury.

Appellee relies principally upon the case of Ely v. New Mexico & Arizona R. R. Co., 129 U. S. 291, 9 Sup. Ct. 293, 32 L. Ed. 688. This was a suit filed in the District Court of the territory of Arizona to quiet title to and recover possession of land under a territorial

statute which authorized suit to quiet title by one in or out of possession against a defendant, whether in or out of possession. The complaint alleged that the defendant was in possession. Defendant demurred to the complaint on the ground that it failed to state facts sufficient to constitute a cause of action. Demurrer was sustained, and on appeal to the territorial Supreme Court the ruling of the court sustaining the demurrer was upheld. The Supreme Court of the United States reversed the decision of the territorial Supreme Court on the ground that in Arizona, by Code, the distinction between actions at law and suits in equity had been abolished, and that under the Code it was competent for the plaintiff to unite in the same complaint legal and equitable causes of action so long as they were properly related. Appellee construes this case as upholding the validity of the territorial statute in question, which would make the case cognizable in equity, although the defendant was in possession. Counsel misinterpret the effect of this decision.

The territorial Supreme Court upheld the ruling sustaining the demurrer on the theory that the cause of action necessarily was in equity only, and of course the complaint did not state facts sufficient to warrant the equitable relief sought. The Supreme Court of the United States, in reversing the territorial Supreme Court, did so upon the theory that the complaint stated a good cause of action, but it did not say whether the cause of action was at law or in equity. It, however, quoted from former decisions of the Supreme Court construing Code provisions of Montana similar to those involved under the Arizona law and said:

"Under precisely similar statutes of the territory of Montana it has been adjudged by, this court that both legal and equitable relief may be granted in the same action, and may be administered through the intevention of a jury or by the court itself, according to the nature of the remedy sought."

Necessarily under this holding the question of a right to jury trial would not be involved in the determination of the fact as to whether the complaint

stated a good cause of action. That question could arise only after the issues were framed. Any other interpretation of this case would run counter to Whitehead v. Shattuck, supra, and numerous other decisions of the United States Supreme Court.

Appellee seems to place some reliance upon the case of Stanton v. Catron, 8 N. M. 355, 45 Pac. 884, but this affords him no support. In that case the plaintiff was the owner of a judgment lien against the real estate in question, and on the strength of such lien sought to have his title to the real estate quieted. The court held that the lien gave him no title in the land or interest in the title; consequently the court was without jurisdiction to entertain his suit to quiet his title. See, also, Security Investment & Development Co. v. Capital City Bank, 22 N. M. 469, 164 Pac. 829.

Appellee cites the following cases which he contends support his position: Parley's Park Silver Mining Co. v. Kerr, 130 U. S. 256, 9 Sup. Ct. 511, 32 L. Ed. 906; Union Mill & Mining Co. v. Warren (C. C.) 82 Fed. 519; Cameron v. U. S., 148 U. S. 301, 13 Sup. Ct. 595, 37 L. Ed. 459; Wall v. Magnes, 17 Colo. 476, 30 Pac. 56; Amter v. Conlon, 22 Colo. 150, 43 Pac. 1002; Zumwalt v. Madden, 23 Or. 185, 31 Pac. 400; Glasmann v. O'Donnell, 6 Utah, 446, 24 Pac. 537; Rough v. Simmons, 65 Cal. 227, 3 Pac. 804; Stratharn v. Dusy, 70 Cal. xx, 11 Pac. 606; Hesser v. Miller, 77 Cal. 192, 19 Pac. 375; Railroad Co. v. Oyler, 60 Ind. 383; Trittipo v. Morgan, 99 Ind. 269.

An examination of these cases, however, will show that they do not go to the extent claimed, and in reality offer no support whatever to the action of the lower court in this case in denying appellants' right to trial by jury.

Appellee argues that he can, under this statute, quiet his title to the real estate in question against the appellants, although in possession, but admits that he cannot, without running counter to the guaranteed

right of trial by jury, oust the appellants of their possession. For this reason, prior to trial, he disclaimed any right to recover possession in this action. He now argues that, if he succeeds in quieting his title by this action, he will then be able to bring a suit in ejectment and oust the appellants; that in such a suit appellants wil be entitled to trial by jury.

The fallacy in this argument lies in the fact that appellee, by a resort to a court of law in the first place, could accomplish the same result in one action that he would seek to accomplish by his method in two; in other words, a suit at law will afford him complete and adequate relief, and this fact of itself precludes him from resorting to a court of equity.

But the complaint was good as against the demurrer, because it did state a cause of action. The error was in denying appellants a trial by jury. In such an action they were so entitled under the territorial form of government, and a continuation of this right was guaranteed by the state Constitution, and for this reason, and the further reason stated by Mr. Justice Raynolds, the cause should be reversed.

### SYLLABUS BY THE COURT.

