STEPHEN CANAVAN v. FRANK DUGAN, Appellee,
C. W. SMITH, Receiver, etc., Intervenor and Appellant.

SYLLABUS BY THE COURT.

BOUNDARIES—MONUMENTS.—Where the monuments actually estab-lished by the United States Surveyor in subdividing a township contradict the field notes and official plat of said survey, the former control the latter and determine the true boundary of a section in controversy.

*Appeal,* from the District Court of Bernalillo County, Sec-ond Judicial District. Affirmed.

Statement of the case by the court.

It appears from the record that the plaintiff below, Cana-van, made a coal entry of the S. E. ¼ of the S. E. ¼ of section

10, in township 15, N. of R. 18 W. of the New Mexico Pr. M. He had opened a coal mine previous to his filing and entered into a partnership with the defendant, Dugan, to operate the same, which was done, and large quantities of coal mined and sold therefrom. Disagreements arising between them, a bill was filed by Canavan for a settlement and winding up of the partnership affairs.

By Act of Congress long prior to the entry of Canavan on section 10, the Atlantic and Pacific Railroad Company, was granted certain lands along its line, among which are those embraced in section 15 of said township. The intervenor, as receiver of said railroad company, intervened in said suit, claiming the said coal mine to be located on said section 15 and, consequently, to be the property of the railroad company, and praying for an accounting as to the amount of coal mined therefrom and for judgment for the value thereof. The testimony was taken by an examiner and reported to the district court, who found against intervenor and dismissed his petition of intervention, from which judgment intervenor appeals.

C. N. STERRY for appellant and intervenor.

CHILDERS & DOBSON for appellee.

PARKER, J.—It will thus be seen that the only question in this case is as to the true location on the ground of the section line between sections 10 and 15. Defendant claims the corner common to sections 10, 11, 14 and 15 to be at a point about one hundred and fifty feet south of the coal mine, and that consequently the mine is in section 10 and the railroad company have no interest in it. Intervenor claims the corner in question to be nine hundred and sixty feet north of the point claimed by defendant, and that consequently the mine is on section 15 and intervenor is entitled to recover.

The township was originally surveyed and subdivided in 1881. The U. S. Deputy Surveyor who subdivided the township is not produced as a witness, and there is no direct testimony as to where the corner in question was originally placed on the ground. Intervenor produces evidence to the effect that in 1896 a monument, properly marked for the corner in ques-

tion, is found in place at a point nine hundred and sixty feet north of the corner, as claimed by the defendant, but offers no proof, except the plat and field notes, which will be presently considered, to show that the corner was originally placed where the monument is now found. He also shows that a monument properly marked for a quarter corner is now found one-half mile east of the monument just mentioned and a monument marked for the S. E. corner of section 11 is now found at a point seven hundred and ten feet north of where it should be to be in harmony with the other corners of the township. Defendant meets this proof by several witnesses who testify that they have in former years seen the monument of the corner in question in place and properly marked at the point claimed by defendant, some putting it prior to 1885. Various witnesses, by means of the official field notes, located the various monuments of adjoining corners, and found them on the ground in place and demonstrate that the proper place for the corner in question, if it is to harmonize with the rest of the township, is where defendant claims it is. Defendant further shows that the monuments now found by intervenor and claimed by him to mark the true corner, bear evidence of having been recently placed in their present position, in that they are not set in the ground and grass is found underneath them. Defendant further shows that the quarter corner between sections 11 and 14 now stands four hundred and twelve feet north of where it formerly stood and where it should stand if it is to be in harmony with the rest of the township. Looking at the testimony in the case, aside from the official plat and field notes, we feel convinced that the monument marking the corner in question was originally placed on the ground by the U. S. Deputy Surveyor at the point contended for by the defendant.

But it appears from the official field notes of the survey that the surveyor, in running the line between sections 14 and 15, started at the S. E. corner of section 15 and ran north and at 23 chains encountered a wagon road, at 28.50 chains encountered the Rio Puerco, at 29.50 chains encountered the Atlantic and Pacific Railroad, at 40 chains set quarter corner, at 64.50 chains encountered an arroyo, and at 80 chains set the corner in question. These topographical features appear upon the face

of the official plat. But it appears from the testimony that the surveyor in running this line made a mistake in his measurements, and that, as a matter of fact, at 40 chains he had only crossed the wagon road and the quarter corner should have been placed between the wagon road and the Rio Puerco, at least south of the railroad. In other words, it appears that the plat puts the wagon road, Rio Puerco and railroad too near the starting point, and in this particular, contradicts the field notes in the calls for distance. On the other hand, the field notes and plat put the corner in question at practically the same distance north of the wagon road, Rio Puerco and railroad, as claimed by intervenor, and where the same is now found. In other words, starting at a point on the line between sections 14 and 15 at the railroad, for instance, the plat and field notes put the south corner of sections 14 and 15 nearer and the corner in question further than we find from the evidence they were originally placed by the Government Surveyor. It will thus be seen that the only real difficulty in the case arises from the fact that the topographical features encountered in running this line have been placed in the wrong place on the line, both by the field notes and the plat. Counsel for intervenor earnestly contends that the plat and field notes being the highest evidence of the location of the corner in question, and they, taking into consideration the calls made for natural objects in the field notes and appearing on the face of the plat, putting the corner in question where it now stands; this evidence must control and establish the corner at that point regardless of where it was originally put upon the ground by the surveyor. To this contention we cannot agree.

It is, of course, a familiar rule that monuments, either natural or artificial, control courses and distances. The monument for the corner in question having been, as we find from the evidence, originally placed by **BOUNDARIES: monuments.** the surveyor who subdivided the township at the place contended for by the defendant, the distance called for in the field notes for the line to run north of the wagon road, Rio Puerco, railroad and quarter corner must yield to the monument placed at the end of the line. If this were a contest

between the owner of the south half and the owner of the north half of section 15, it might be that the line would have to be extended north so as to include the natural objects called for in the field notes, and thus make the south half of the section much larger than the north half. But we know of no reason or rule of law requiring an error to be protracted beyond the point which will include the natural or artificial monuments called for in the field notes.

Even if the location of the original monument in question were not satisfactorily established, and we may say that it is not entirely so in this case, it is equally true that its original location at the point claimed by the intervenor is not satisfactorily shown. And assuming, *arguendo*, that no monument, either at the place contended for by defendant or by intervenor, is satisfactorily identified, our conclusion must still be the same. For, starting at the S. E. corner of section 15, and running north, after having passed the natural and artificial monuments called for, course and distance from the starting point again takes control of the line and thereby the same would terminate at the corner claimed by defendant.

But it is contended by counsel for intervenor that the official plat of this township as returned by the Surveyor General shows the corner in question to be where claimed by him and, the plat being the highest evidence, it cannot be contradicted. He cites Cragin v. Powell, 128 U. S. 691; Beaty v. Robertson et al., 30 N. E. Rep. 706. In Cragin v. Powell, a controversy arose in Louisiana over the boundary of lands of contiguous owners in certain sections. The survey and plat placed upon the lands of the first entryman certain bayous, the lands upon either side of which were valuable as sugar lands. The second entryman bought by the same plat adjoining portions of the same sections. The latter claimed that the original survey of the Government was erroneous in that the eastern tier of sections of the township were not full size, and that giving them the proper size, the said bayous would fall in the lands covered by his entry. The plat and field notes are not shown in the report of the case nor are the locations of the monuments in controversy made to appear. But we do not understand the Supreme court to be committed by this opinion to the proposition

that the plat, by reason of topographical features appearing upon its face, can place a survey at a different place upon the ground from where it was actually placed by the surveyor. Thus in Horne v. Smith, 159 U. S. 40, the plat showed that the lands in controversy bordered on the Indian River, while it appeared that in fact they were surveyed only to a bayou a mile or more east of the river. The court held that the true boundary was the bayou, and not the river. In Beaty v. Robertson et al., supra, it appears that section 6 had an Indian boundary running diagonally through it from northwest to southeast. The township was fractional and the surveyor erroneously surveyed the south line of the section from west to east, thus throwing the excess land in the south half of the section on the eastern and interior subdivision instead of the exterior subdivision as should have been done. It further appears that the Surveyor General made a note of this error on the field notes returned to him, and in issuing the official plat of the township, corrected the error in accordance with his note on the field notes. This was within the scope of his authority and was in effect a new survey before the lands were sold by the plat made in accordance therewith. And the court held that the plat, representing this change in the field notes, controlled the location of the line between the subdivisions involved. We see nothing in this case antagonistic to our views herein expressed. Authorities from State courts are abundant that monuments control both plat and field notes, some of which are cited. Martin v. Carlin, 19 Wis. 454-457; McClintock v. Rogers, 11 Ill. 279; Ogilvie v. Copeland, 145 Ill. 98, 33 N. E. 1085; Robinson v. Laurer, 40 Pac. (Or.) 1012; Bauer v. Gottmanhausen, 65 Ill. 499; Woods v. West, 58 N. W. (Neb.) 938; Peterson v. Skjelver, 62 N. W. (Neb.) 43; Cadeau v. Elliott, 34 Pac. (Wash.) 916.

This conclusion renders it unnecessary to consider the other assignments of error which relate largely to matters of practice and procedure. The decree of the lower court will be affirmed and it is so ordered.

Mills, C. J., McFie and Crumpacker, JJ., concur.
Leland, J., took no part in this decision.