Priest, et al, v. Las Vegas, 16 N. M. 692.

[No. 1342.    December 22, 1911.]

Ex Parte GEORGE E. PRIEST, MELVIN W. QUICK and CHARLES M. BENJAMIN, Relators, Appellants, v. BOARD OF TRUSTEES OF THE TOWN OF LAS VEGAS, Respondents, Appellees.

SYLLABUS (BY THE COURT).

1. Statutory provisions for the service of process upon unknown claimants by publication in actions to quiet title will be strictly construed.

.2. If it be sought in such a case to bar the known confirmee of a grant such confirmee should be sued by name in the proceeding and not under the description of an unknown claimant.

3. The rule last stated applies notwithstanding the confirmee named is an unincorporated town, the latter being by the congressional confirmation recognized and designated as an entity capable of receiving the title.

Appeal from the District Court for San Miguel County, before WILLIAM J. MILLS, Chief Justice.    Affirmed.

VEEDER & VEEDER for Appellants.

Mandamus is appropriate remedy.    C. L. 1897, sec. 2716; Laws 1903, p. 73, sec. 7; Walkley v. City of Muscatine, 6 Wall. 481; La Grange v. State Treasurer, 24 Mich. 469.

A judgment on default is as conclusive against collateral attack as any other form of judgment.    Ruppin v. McLachlin, 98 N. W. Rep. 153; 23 Cyc. 1077; Noble v. Union River Logging R. R., 147 U. S. 165; Hahn v. Kelly, 34 Cal. 391; Huling v. Kaw Valley Ry., 130 U. S. 559; High on Ex. Legal Rem., 2 ed., sec. 396; Mayor v. Lord, 9 Wall. 409; Supervisors v. U. S., 4 Wall. 435; Commissioners v. Aspinwall et al, 24 Howard 376; Supervisors v. Durant, 9 Wall. 415.

Mandamus proceeding is not a civil action.    Duke, Mayor etc. v. Turner et al, 204 U. S. 623; Chapman v.

Douglas County, 107 U. S. 348; Chinn v. Trustees, 32 Ohio St. 236; Code, sec. 175; Laws 1907, p. 294; Laws 1899, p. 169; Laws 1903, p. 9; Laws 1905, p. 325; Laws 1907, p. 294; Conklin v. Cunningham, 7 N. M. 445; Leavenworth v. Leavenworth et al, 64 Pac. 66; Keasy et al v. Bricker et al, 60 Pa. 1; Sherman v. Langham, 42 S. W. 961; U. S. v. New Orleans, 98 U. S. 381.

CHARLES A. SPIESS and S. B. DAVIS, JR., for Appellees.

Means provided to determine validity of titles within ceded territory. Federal Acts of March 3, 1851, August 21, 1852, July 22, 1854, sec. 8; August 25, 1854.

Town grants. Grisar v. McDowell, 6 Wall. 363; Townsend v. Greeley, 5 Wall. 326; U. S. v. Sandoval, 167 U. S. 278; U. S. v. Santa Fe, 165 U. S. 675; San Francisco v. Canavan, 42 Calif. 541; San Francisco v. LeRoy, 138 U. S. 656; Monterey v. Jacks, 73 Pac. 436, affirmed 205 U. S. 360; Maese v. Herman, 183 U. S. 72; Hayes v. U. S., 170 U. S. 637; Board of Education v. Martin, 92 Cal. 209; Law 1903, chap. 47; Law 1909, chap. 103.

## OPINION OF THE COURT.

POPE, C. J.—The appellants, Priest, Quick and Benjamin, brought proceedings in the district court of San Miguel county to require the Board of Trustees of the Town of Las Vegas to execute to them a deed for a tract of land forming a part of what is known as the Las Vegas Land Grant. The petition is entitled one for mandamus, but it partakes in form rather of a petition to the court for an order on the trustees (who under the law are appointees of the court) to execute a deed. The petition sets forth as the basis of the claim a certain decree rendered in the district court of San Miguel county, on September 15, 1894, quieting plaintiffs' title to the tract in question. There were pleadings denying the force of this adjudication as binding on the defendant trustees, and there was also a cross complaint praying the quieting of defendant's title as against this alleged decree. Upon full hearing the

court granted a decree dismissing plaintiff's petition. Some point is made upon the failure of the trial court to sustain a motion to strike out the cross complaint, because having no place as a pleading defensive to mandamus. But assuming the proceedings to be mandamus,—a matter as we have above noted not entirely clear—there was no prejudice to plaintiffs for the court below granted no relief upon the cross complaint, the judgment entered being one merely denying the relief prayed, and, as we have seen, dismissing the petition. The gist of the whole case, in our judgment, lies in the inquiry as to whether the decree of 1894 was binding against defendants. In this view of the matter much testimony that was produced at the trial and much that was argued in this court becomes immaterial. For instance, a large part of the argument here was to demonstrate, contrary to what was held in the decree of 1894, that the statute of limitations could not, at the date of those proceedings run against the Las Vegas grant and in favor of plaintiffs, and that the title decreed in 1894 to plaintiffs proceeded upon a false premise, in that it quieted title upon the statute of limitations when the status of the grant title was such that no rights by limitation could accrue. If, however, the court had jurisdiction, as against defendants to render the decree of 1894, all the findings upon which that decree proceeds are likewise conclusive against it and it avails nothing to inquire, as did the trial court, into whether such findings were as a matter of fact properly made. The whole question, therefore, is whether the proceedings of 1894 bind the present defendants. The suit there filed was against certain named individuals (not here involved) and "all the unknown claimants of interest in the premises and lands hereinafter described adverse to complainants." It alleges plaintiffs to be the owners in fee simple of the premises here involved by virtue of adverse possession under color of title for the statutory period preceding the bringing of the suit and it prays the quieting of title in plaintiffs. There was the following allegation in the complaint: "That the said tract of land lies within the exterior boundaries of that certain grant of land made by the government of

Mexico in the year A. D., 1835, to Juan de Dios Maese and others, and known as the Las Vegas Grant, the said grant, as your orators are informed and believe, being made by the Mexican government to the said Juan de Dios Maese and others for the use and benefit of the inhabitants and settlers of the town of Las Vegas. That the said grant of land made by the Mexican government to Juan de Dios Maese and others, was known in the archives of the Surveyor General of New Mexico, as private land claim number twenty (20), and as such was, on July 21, 1860, duly confirmed by Act of Congress of the United States to the Town of Las Vegas, and thereby became segregated from the public domain of the United States." The suit was brought under the provisions of statute now appearing as Sections 4010, 4011, of the Compiled Laws of 1897, reading as follows: "An action to determine and quiet the title of real property may be brought by any one having or claiming an interest therein, whether in or out of possession of the same, against any person claiming title thereto. The plaintiff must file his bill of complaint in the district court, setting forth the nature and extent of his estate, and describing the premises as accurately as may be, and averring that he is credibly informed and believes that the defendant makes some claim adverse to the estate of the plaintiff, and praying for the establishment of the plaintiff's estate against such adverse claims, and that the defendant be barred and forever estopped from having or claiming any right or title to the premises adverse to the plaintiff, and plaintiff's title thereto be forever quieted and set at rest. Any or all persons whom the plaintiff alleges in his bill of complaint, he is informed and believes make claim adverse to the estate of plaintiff, the unknown heirs of any deceased person whom plaintiff alleges in his bill of complaint, in his life-time made claim adverse to the estate of plaintiff, and all unknown persons who may claim any interest or title adverse to plaintiff, may be made parties defendants to said bill of complaint, by their names, as near as the same can be ascertained, such unknown heirs by the style of unknown heirs of such deceased person, and said unknown person who may claim

any interest or title adverse to plaintiff by the name and style of unknown claimants of interests in the premises adverse to the plaintiff and service of process on, and notice of said suit against defendants, shall be made in the same manner as now provided by law in other civil suits." The service by publication was under what now appears as C. L. 2964, which is as follows: "When any plaintiff or complainant, his agent or attorney, in any civil cause pending, or hereafter commenced in any court of record in this territory, shall file in the office of the clerk of said court, a sworn petition, bill of complaint, or affidavit, showing that the defendant, or any one or more of them in said cause, resides, or has gone out of the territory, has concealed himself within it, has avoided service of process on him, or is in any other manner so situated that process cannot be served upon him or them, or that his or their names, or place of residence is unknown, or that his or their whereabouts cannot be discovered; in such case it shall be the duty of the said clerk to publish a notice of the pendency of said cause, to said defendant or defendants, in some newspaper published in the county where the cause may be pending." The regularity of the service is not here questioned. Default was adjudged and the cause went to final decree on September 15, 1894. The decree declares that plaintiff, by reason of adverse possession under the statute, is the owner in fee simple of the premises and his title is "confirmed and established in the complainants and each of them against any and all and every adverse claim of the said defendants or any of them or of any person whatsoever and the said defendants are and each of them hereby is forever barred and estopped from having, claiming or asserting any right, title or interest or claim whatsoever in and to the said tract and parcel of land and real estate, or any portion thereof, adverse to the said complainants or any of them, and the title of the said complainants and each of them in and to the above-described tract of land and real estate, and each and every part thereof, is hereby forever quieted and set at rest."

Did this decree bind the present defendants, the Board of Trustees of the Town of Las Vegas? The Board

was not *eo nomine* a party, nor, indeed, was it in existence in 1894. Any effect of the decree upon it must, therefore, result from its holding under some party to the cause. That it does not hold under any of the individuals named is conceded. That it is not affected by the futile provision of the decree quieting title against "any person whatsoever" is evident. The only remaining alternative is that it is bound because of the fact that "all the unknown claimants of interests in the premises adverse to complainants, were cited in the publication and were decreed the publication and were decreed against in the court's disposition of the case and that this was a binding adjudication against defendant under Compiled Laws, 4011, above quoted. But, in 1894, were the owners of the Las Vegas Grant, whom defendant now represents, unknown owners? The complainants certainly knew the exact status of the matter for their complaint, as we have seen, in terms alleged that the premises were a part of the Las Vegas Grant "on June 21, 1860, duly confirmed by Act of Congress of the United States to the Town of Las Vegas."

The complainants thus knew that the Town of Las Vegas was the confirmee of the grant and that if complainant's title had, by adverse possession, been wrested from any one it was from such confirmee. Knowing this, we are of opinion that it was their duty to have made the Town of Las Vegas a party, and that the term **2** "unknown owners" could not be utilized to divest title from what the Act of Congress, no less than plaintiffs' conceded knowledge, told them was the true ownership of the property. Statutes providing for constructive service are subject to great abuse. They are, of course, necessary, since without them titles could never be quieted or proceedings in rem maintained against non-resident or truly unknown parties. But it is a matter of judicial knowledge that a published summons in the vast majority of cases fails to reach those to whom addressed and that property is taken with but a theoretical opportunity for the hearing which is an essential of due process of law. Considera-

tions such as these last named lead the courts to insist upon a strict construction of such statutes and to hold that where the real owner may be brought into court by name his property may not be taken by an advertisement against unknown owners. Where, as in this case, the locus of the title is definitely declared of record and such is confessedly known to the complainant, it is but an exaction of good faith that the holder of such title should be summoned by name in order that he may appear and defend. To exact less is to open the doors wide to insidious attacks upon property rights, and, indeed, to ignore the statute, which in terms provides, (C. L., sec. 4011) that persons claiming interests "may be made parties defendant by their names, as near as the same can be ascertained." The cases upon this particular subject are not numerous, but among these Ware v. Easton, 46 Minn. 180, is very close to the point. In that case it is said: "It is claimed that the summons was defective in not naming Homan, the patentee of the land, as one of the defendants; and we think this objection well taken. In so far as the records disclosed, he was the owner of the government title. The defendant was bound to take notice that Homan was the patentee of the land, as well from the government records as those of the county. The important provisions of this statute, as a means of notice to the unknown claimants, are the designation of the names of interested parties who are known and those who appear such by the records, together with the publication of the notice of *lis pendens* containing a description of the land, and the record of the same. If the land appears to have been entered by Homan, and his grantees, if any, are unknown and not disclosed by the records, the most effectual notice to those claiming under him would be to name him, in connection with the general designation of such unknown claimants. The statute must be strictly construed and followed, and it is enough that it requires such parties to be specially named. If any one appearing by the record to be the owner of the patent title under the original owner is designated, of course it would not be necessary to name any preceding owner under whom he claimed; but he who appears to be

the owner of record must be named, unless the actual holder of the title can be discovered and named; that is to say, if it be desired to bind unknown parties claiming some right or interest derived from or under the original patentee of the United States. The same rule would apply, *mutatis mutandis,* to parties claiming a separate title under the state through tax-sales. The statute was not complied with in the case under consideration here. The notice was insufficient to bing Bragg, the owner of the patent title at that time, and the judgment is void as to him and those claiming under him."

It is said by plaintiffs, however, that the designation of the ownership of the Las Vegas Grant as "unknown claimants" was justified upon the grounds that the Town of Las Vegas as used in the act of confirmation, was a mere aggregation of people without corporate organization, and that the suit became thus one practically against the individuals residing on the grant and that as to these the designation of unknown owners was necessary and proper.

It is further said that there was no officer upon whom process might be served. We are not, however, impressed with these contentions. Much that is here said upon the subject was ineffectually urged to the Supreme Court of the United States in Maese v. Hermann, 183 U. S. 572, where it was contended that the Town of Las Vegas could not take the patent to the grant, because it was without legal or corporate existence, a nonentity. The court held, however, that "the town and its inhabitants were certainly substantial entities in fact and were recognized by Congress as having rights and directed such rights to be authenticated by a patent of the United States" and patent issued accordingly. To the claim that there was no officer of the town upon whom process might be served the obvious answer exists, that under C. L. 2964, then in force, service by publication could be made since in that event the defendant "was so situated that process could not otherwise be served upon it." The judgment is affirmed.