216 P.2d 364

**MURRAY HOTEL CO. v. GOLDING et al.**

No. 5184.

Supreme Court of New Mexico.

March 1, 1950.

Rehearing Denied April 13, 1950.

W. C. Whatley, Las Cruces, J. D. Weir, Las Cruces, W. B. Darden, Las Cruces, for appellants.

Woodbury & Shantz, Silver City, for appellee.

SADLER, Justice.

The action out of which this appeal arises is one in ejectment involving ownership and possession of a narrow strip of land slightly over two feet in width and 100 feet in length, lying in the town of Silver City, New Mexico, claimed by the plaintiff as a part of Lot 14 in Block 68 according to the John R. Fraser survey and plat thereof and by the defendants as a part of Lot 15 in said Block, adjoining Lot 14 on the east.

It will conduce to a readier understanding of the situation on the ground if we locate the two lots directly involved with reference to other lots in the block. It is an admitted fact that according to the Fraser survey Block 68 forms a square having dimensions of 200 feet east and west and 200 feet north and south. It is divided into 16 lots 25 feet in width and 100 feet in length. The block is bounded on the north by Yankie Street, on the east by Texas Street, on the south by Broad-

way and on the west by Arizona Street. Lots in the south half of the block run consecutively from 1 to 8, east to west, commencing at the southeast corner of the block at the intersection of Texas and Broadway. The eight lots forming the upper half of the block are numbered from 9 to 16, extending east from the northwest corner of the block at the intersection of Arizona and Yankie Streets.

The plaintiff, Murray Hotel Company, owns Lots 1, 2, 3 and 4, on which the Murray Hotel, Silver City's leading hostelry, is located. It also owns Lots 13 and 14 on which, or on the greater part thereof, it was engaged in constructing an annex at the time of trial. The defendants own Lots 15 and 16 in Block 68 on which, or on the greater portion thereof, are erected certain buildings and improvements. It is a strip of land 2.5 feet in width on the north end and 2.21 feet in width on the south end, located at the juncture of lots 14 and 15 and extending the full length of said lots, north and south, that is the subject of this action in ejectment. It seems obvious from what is said that the basic controversy between the parties is over the question as to where the true boundary line between Lots 14 and 15 actually lies

At the time the plaintiff hotel company acquired Lots 14 and 15, what is referred to in evidence as the American Grocery Company warehouse, occupied the larger portion of Lots 13 and 14, extending back south from Yankie Street some 70 feet. A measurement taken from northwestern corner of this building, which is exactly on the west line of Lot 13, thence due east, gives the building a width of 47.95 feet from outside face of west wall to outside face of east wall. Originally, it was only 70 feet in depth until an extension for the full length of the lot was erected. Between the east wall of this building on Lot 14 and the defendants' (Golding) structures on Lot 15 there was a space from 4 to 5 feet in width which, for many years prior to May, 1940, had been used jointly by the father of defendants and by the plaintiff's predecessor in title and interest to service the Golding buildings on Lots 15 and 16 and an old Broadway Hotel property occupying Lots 1, 2, 3 and 4. In about the month of May, 1940, however, the defendants enclosed the small strip in dispute by an adobe wall.

It was when plans for the construction of the annex to Murray Hotel on Lots 13 and 14 were nearing completion in the early part of 1948, and upon a visit to Silver City by the architect for the new structure that direct, positive knowledge was first brought home to officers of Murray Hotel Company of a claim by defendants to any part of Lot 14. While viewing the premises and looking down what he deemed the boundary line between Lots 14 and 15, the architect called to the attention of

James S. Ryan, secretary-treasurer of the plaintiff, that defendants were encroaching on Lot 14. Protest to defendants was promptly made by plaintiff's attorney and efforts at compromise failing, this action in ejectment followed. At the conclusion of a jury trial, a verdict in plaintiff's favor was returned upon which judgment in conformity was entered in due course. It is for the revision and correction of the judgment so entered for claimed errors at the trial that the defendants prosecute this appeal.

The action of the trial court in refusing several instructions requested by defendants on the issue of adverse possession is strongly urged upon us as ground for reversal but we find no error. If the narrow strip in dispute was a part of Lot 15, admitted ownership of which was in defendants, they held rightly under the deed conveying this lot to their father, not adversely to any one. Under such conditions, they required the aid of no instrument serving as color of title, claiming under the better instrument giving actual title. If the narrow strip in dispute was not a part of Lot 15, then two elements, indispensable to gaining title to it by adverse possession, are lacking, namely, color of title and payment of taxes. The trial court did not err in failing to instruct on the issue of adverse possession.

But it is said the trial court erred in failing to instruct a verdict in defendants' favor at the close of all the evidence because of failure of plaintiff to offer proof as to where the line of any lot within the John R. Fraser survey actually lay. So failing, and the burden being on plaintiff to establish the eastern boundary of Lot 14, Block 68 of said survey, the jury should have been instructed to return a verdict for defendants. So runs the argument.

In order to clarify matters, it should be pointed out that in its complaint as originally filed the plaintiff described the particular premises, from possession of which it wished to oust defendants, as Lot 14, Block 68, Town of Silver City, "according to the survey and plat thereof made by John R. Fraser." During the trial plaintiff applied for and was granted leave, over defendants' objection, to file a trial amendment to its complaint wherein it gave a metes and bounds description of the small strip, although still alleging it to be within and a part of the Lot 14, according to the Fraser Survey. It having developed at the trial that none of the original corners of the Fraser Survey made some 70 years earlier could be located, and that Surveyor Bard's location of the true line between Lots 14 and 15 was founded largely on data gathered in an occupational survey, the plaintiff's proof failed according to counsel for defendants and his motion for directed verdict should have been sustained.

If the argument of defense counsel on this phase of the case be correct, it

would be impossible for a plaintiff out of possession, whose title deeds described premises in the John R. Fraser Survey, ever to succeed. In other words, no definite point, monument or corner in the Fraser Survey being any longer in existence, the party basing his title on property in it would be faced from the outset by an inability to sustain the burden always resting on a plaintiff in an action in ejectment. Happily for property owners, where destruction or obliteration of original monuments of a survey has occurred, they are not denied the privilege of establishing original lines by other proof, if it is available. In the absence of known monuments, the best evidence obtainable may be resorted to for the purpose of establishing orginal lines. Ordinarily, physical evidence on the ground such as occupancy, street lines, old buildings, measurements, quantity of land called for by the deeds and other like evidence may tend to disclose what is the true line. Taylor v. Higgins Oil & Fuel Co., Tex.Civ. App., 2 S.W.2d 288; Leone Plantation, Inc., v. Roach, Tex.Civ.App., 187 S.W.2d 674. Cf. Velasquez v. Cox, 50 N.M. 338, 176 P.2d 909.

It is next urged upon us that the trial court erred in instructing and in refusing to instruct as requested touching the issue of agreed boundary by acquiescence. A careful study of the requested instructions and those given on this issue satisfies us there was no error in the trial court's action. Indeed, in so far as the specially requested instructions 2, 3 and 4, the refusal of which is complained of relate to adverse possession, they were properly refused as not embracing two essential elements on such issue, namely, color of title and payment of taxes. The exceptions interposed to the trial court's refusal of these instructions strongly suggest that counsel for defendants regarded them as relating to the issue of adverse possession alone. On the other hand, viewed as instructions on the issue of acquiescence, they fall short of a correct statement of the law in that they leave out altogether the element of implied agreement. J. H. Silsby & Co. v. Kinsley, 89 Vt. 263, 95 A. 634; Cartensen v. Brown, 32 Wyo. 491, 236 P. 517. See, also, Rodriguez v. La Cueva Ranch Co., 17 N.M. 246, 134 P. 228.

The instructions which the court actually gave on this issue, Nos. 6 and 7, are not subject to any of the objections urged against them by counsel for defendants. If anything, they are more favorable to defendants, than they had a right to expect. Especially is this true of instruction No. 6 which, viewed alone, omits the element of implied agreement just as did defendants' requested instruc-

tions on the issue. However, when read in connection with instruction No. 7, also relating to the issue of acquiescense, the omission mentioned is supplied. We find no error in the trial court's action in instructing and refusing to instruct on the issue of acquiescence.

Finally, it is said the trial court committed reversible error in admitting in evidence over objection by defendants the record of the suit to quiet title, including final decree entered therein on March 17, 1938, under a complaint filed on January 31, 1938, and in instructing the jury, as it did, in reference thereto. The instruction complained of is No. 11. It disclosed the nature of the suit mentioned and reads as follows:

"11. You are further instructed that W. D. Murray and J. S. Ryan, plaintiff's predecessors in title, brought suit on January 31, 1938, to quiet their title to Lots 13 and 14 of Block 68; that notice by publication was given to all unknown claimants of interest adverse to plaintiffs, and on March 17, 1938, a decree was entered by this Court in Cause No. 9370 quieting title to said premises in W. D. Murray and J. S. Ryan. If you find that on January 31, 1938 the then owner of Lot 15 was making no claim to any part of Lot 14, he was properly designated in said suit as 'unknown claimants of interest adverse to plaintiff in Lot 14' and as of March 17, 1938 was foreclosed of any interest in said Lot 14, and any rights which the present defendants may have acquired in said Lot 14 by acquiescence would then have to be based upon the acts of the parties subsequent to March 17, 1938."

The objection to the admission in evidence of the record of this suit and to the giving of the instruction was that before the quieting title suit could have any effect whatever it would have to be shown that the defendants' father was an unknown claimant of interest in the premises involved and that the record of said suit was wholly immaterial and could only serve to confuse the issues. The objection to giving of the instruction touching this evidence is in the following language, to-wit:

"Defendants except to instruction No. 11, proposed to be given by the Court to the jury, wherein the jury is told that it has the right to consider the suit to quiet title brought by W. D. Murray and James S. Ryan in January, 1938, wherein plaintiff seeks to bind the defendants in this case under the name of 'unknown claimants of interest adverse to plaintiffs in Lot 14,' for the reason that in no circumstance can a party who is in adverse, open, notorious and visible possession of property be bound by a suit to quiet title under the name of 'unknown claimants,' and particularly is

this true where the land involved in the controversy is immediately adjacent to the land the title of which is sought to be quieted."

In considering this claim of error, we start out with the admitted fact that at the time the quieting title suit was filed and decree entered therein, the plaintiff was the owner of Lot 14 and the defendants' father was owner of Lot 15, each having a dimension of 25x100 feet. If, actually, the disputed strip was a part of Lot 14, then the defendants, as the court instructs, are barred by the decree entered in the above mentioned suit, save as to any acquiescence found where based on acts subsequent to its entry, if the ancestor, their father, was properly made a party to the suit under the designation of an unknown claimant of interest.

It is to that portion of the instruction which announces defendant's ancestor was properly joined as an "unknown claimant" of interest in the premises involved if, on the date mentioned, he was making no claim to any part of Lot 14, that defendants level their most vigorous criticism. In other words, as seen in argument by them, the instruction virtually tells the jury that the father of defendants "was an unknown claimant if he didn't claim." Although appreciating the force of the answering argument of plaintiff's counsel to

this criticism, especially, that it is the fact a party's claim is "unknown," not that he is "unknown," which controls; nevertheless, we must confess we share some of the confusion of defense counsel over the wording of this instruction. However, it is not on such basis that we hold the giving of it necessarily erroneous, the exception made not fairly pointing out this objection.

As we view the matter, the instruction had no place in the case at all and could only have tended to confuse and mislead the jury. True enough, the decree in the suit mentioned quieted title in plaintiff's predecessors in interest to all of Lot 14 as against all properly made parties who claimed any part of it. But the deed to the lot accomplished as much in so far as the present controversy between plaintiff and defendants is concerned. Cf. Rodriguez v. La Cueva Ranch Co., 17 N.M. 246, 134 P. 228. It still left it an open question as to where the true line between Lots 14 and 15 lay.

As we said earlier in our opinion, the case represents essentially a boundary dispute. Ejectment is the remedy ordinarily invoked in the settlement of such disputes. 8 Am.Jur. 807, § 86 "Boundaries;" 11 C.J.S., Boundaries, p. 683, § 98. Case notes, 119 Am.St.Rep. 66; 11 Ann.Cas. 1127; Ann.Cas.1915A, 354.

So it has been in New Mexico more often than otherwise. Pinkerton v. Ledoux, 3 N. M., Gild., 403, 5 P. 721; Upton v. Santa Rita Mining Co., 14 N.M. 96, 89 P. 275; Tagliaferri v. Grande, 16 N.M. 486, 120 P. 730; DeBurg v. Armenta, 22 N.M. 443, 164 P. 838; Ward v. Rodriguez, 43 N.M. 191, 88 P.2d 277; Velasquez v. Cox, 50 N. M. 338, 176 P.2d 909. To be sure, where the fixing of boundaries is ancillary to some recognized ground of equity jurisdiction, having taken jurisdiction for one purpose, equity will retain it to award complete relief even where it involves settling a boundary dispute. Canavan v. Dugan, 10 N.M. 316, 62 P. 971; Rodriguez v. La Cueva Ranch Co., supra; Sunmount Co. v. Bynner, 35 N.M. 527, 2 P.2d 311; Board of Trustees of Casa Colorado Land Grant v. Pooler, 38 N.M. 87, 28 P.2d 519; Nickson v. Garry, 51 N.M. 100, 179 P.2d 524.

It is well established doctrine that our statute, now known as District Court Rule, 1941 Comp. § 19-101, 4g, authorizing substituted, as distinguished from personal, service of process is to be strictly construed. It does not permit the joinder as a defendant, under the designation "unknown claimants of interest", in a suit to quiet title, 1941 Comp. § 25-1302, of one in possession or whose claim of interest could have been ascertained by ordinary inquiry and diligence, thus permitting joinder as a defendant by name. Priest v. Board of Trustees of Town of Las Vegas, 16 N.M. 692, 120 P. 894; Rodriguez v. La Cueva Ranch, supra; Pankey v. Ortiz, 26 N.M. 575, 195 P. 906, 30 A.L.R. 92.

It is an established fact in this case, put forward by counsel for plaintiff to oppose defendant's claim of adverse possession, that there was a joint use and occupancy of this narrow strip for servicing the buildings owned by Robert Golding on Lots 15 and 16, and by plaintiff's predecessors in interest for servicing the Broadway Hotel occupying Lots 1, 2, 3 and 4, in Block 68. The tramway on which coal and other supplies to the buildings, and garbage and other articles from them, were transported, used a portion of the area on each of adjoining Lots 14 and 15. The use was joint and not adverse on the part of the respective lot owners. Furthermore, it was open, visible and necessarily known to such owners.

So it was in January, 1938, when the suit to quiet title was filed out of which arose the decree in question. It was not the form of action ordinarily employed to settle a boundary dispute, even if we assume such thought was actually in the minds of the plaintiffs. And there was, at the time of suit, such a known use and occupancy of the strip by the owners of Lot 15, even though joint in character

and involving a like use by the owners of Lot 14 of an approximately equal portion of Lot 15, as to impose upon either set of owners, seeking to settle the boundary dispute in a quieting title suit, the duty of joining the other by name as parties defendant or defendants. Priest case, supra; Rodriguez v. La Cueva Ranch, supra; Pankey v. Otiz, supra. Cf. Nickson v. Garry, supra. Having failed to do so, the decree does not bind the defendants. For this reason alone it was improperly admitted in evidence. It was inadmissible for the further reason that it settled nothing except ownership by plaintiff's predecessors in interest of Lot 14. The true boundary line between Lots 14 and 15 was not in issue and remained an open question, whenever a dispute over it should reach the controversial stage. The plaintiff fell upon the appropriate action in which to settle such a controversy when it instituted this action in ejectment.

For the error in admitting in evidence the decree in the suit to quiet title, the judgment must be reversed and the cause remanded with a direction to the trial court to set aside its judgment and award a new trial. The defendants shall recover their costs in this court.

It is so ordered.

BRICE, C. J., and LUJAN, McGHEE and COMPTON, JJ., concur.