**Estate of Lina M. Taisacan,**
Plaintiff/Appellant,

**v.**

**Juan Hattori** and
Daiwa International Corporation,
Defendants/Appellees.
Appeal No. 92-031
Civil Action No. 91-0778
August 9, 1993

the trial court held that the Estate was not entitled to relief against the named defendants.

We have jurisdiction pursuant to 1 CMC § 3102. For the reasons noted below, we vacate the judgment of the trial court.

I

On July 28, 1959, the Trust Territory government issued land title Determination of Ownership 422 ("TD 422") in favor of the late Presentacion Atalig, defendant Hattori's mother. TD 422 encompasses Lot 3048 (hereinafter "Lot 3048" or "Hattori property"). The size of the Hattori property is approximately 4.75 hectares.[1] On September 6, 1967, the Trust Territory government issued Determination of Ownership 519 ("TD 519") in favor of the late Lina M. Taisacan, whose estate filed this action. TD 519 encompasses Lot 3150 (hereinafter "Lot 3150" or the "Estate property"). The size of the Estate property is approximately 1.5 hectares.[2]

In 1983, the Commonwealth government performed a survey of privately-owned lands situated next to the public road running from Songsong Village to Sinapalo. The Hattori property was among the parcels surveyed. The Hattori property, after the survey, showed an increase of 9,611 square meters from the approximate area stated in TD 422. The Estate property, adjacent to

Argued and Submitted March 11, 1993

Counsel for appellant: Douglas F. Cushnie, Saipan.

Counsel for appellees: Antonio M. Atalig, Saipan.

BEFORE: DELA CRUZ, Chief Justice, VILLA-GOMEZ, Justice, and HILLBLOM, Special Judge.

DELA CRUZ, Chief Justice:

■ The estate of Lina M. Taisacan (hereinafter "Estate") through its administratrix, Olympia T. Leon Guerrero, appeals an adverse judgment entered in an encroachment action. The case arose as a result of an allegedly erroneous government survey of a certain parcel of land located in Teteto, Rota, that belongs to Juan Hattori. Concluding that neither Hattori nor his predecessor in interest acted "negligently or intentionally" in extending the boundaries of the defendants' property,

---

[1] The Hattori property is described as:

Bounded on the North by property of Manuel Ayuyu, on the East by property of Juan Atalig, on the West by the Ocean, and on the South by properties of Jose Taimanao and Antonio Barsinas, containing an area of 4.75 hectares, *more or less, subject to survey.* Determination of ownership is exclusive on [sic] any existing roadway, right of way or easement upon said land.

(Emphasis added.)

[2] The Estate property is described as:

Bounded on the North by property of Manuel H. Ayuyu, on the East by property of Huberto A. Taisacan, on the West by property of Presentacion A. Hattori, and on the South by property of Juan Lizama Atalig, containing an area of 1.5 hectares, *more or less, subject to survey.* Determination of ownership is exclusive of any existing roadway, right of way, or easement upon said land.

(Emphasis added.)

28

the Hattori property but away from the public road, was not surveyed.

On July 6, 1984, the Northern Marianas Land Commission issued a certificate of title to defendant Hattori's mother. The certificate, relying on the 1983 government survey, states that Lot 3048 has a land area of 57,111 square meters.

In 1990, the Estate retained Alfred K. Pangelinan, a licensed land surveyor, to conduct a survey of the Estate property, Lot 3150. Based on his review and survey, Pangelinan asserted that Lot 3150 was short by some 2,175 square meters. He testified that the shortage resulted from the increase in size of the Hattori property and another adjoining lot, Lot 3159, due to the 1983 government survey.

The survey of the Estate property was based on government-established survey controls. Pangelinan used a "brass disk" located in the center of the main highway abutting the Hattori property as the survey's reference point. From there, Pangelinan was able to identify the northwest and southwest corners of the Estate property. Concrete markers had been placed on these corners in or before 1983 by Rota Land Management. The location of these two corners was further confirmed by the existence of a barbed wire fence running along the western edge of the Estate property.

Pangelinan relied on Rota Land Management data showing the distances between the Estate property's southwest and southeast corners, the northwest and northeast corners, and northwest and southwest corners. The southeast corner, where a Japanese concrete marker was located, coincided with Land Management computations. Coconut trees line the border, at least partially, of Lot 3150 between the southwest and southeast corners.

The parties do not dispute the validity of TD 422, TD 519 or the information used by Pangelinan in surveying the Estate's property.

In contrast, only two documents support the defendants' position that the Hattori property is substantially larger than the area designated in TD 422. These are the 1983 government survey of the Hattori property and the corresponding certificate of title issued to Presentacion Hattori based on the 1983 survey. The defendants' witnesses could not satisfactorily explain the approximate one hectare variance in the size of the defendants' property between that set forth in the 1983 Land Commission certificate of title and TD 422, issued in 1959. The defendants rely on one of their witness's assertion that the Land Commission somehow "negotiated" this increase.

In fact, the record reveals that after the Land Commission issued the certificate of title to the Hattori property, defendant Hattori and another adjoining landowner, Abraham E. Taisacan, on behalf of the heirs of Servino Taisacan, signed an "Agreement Regarding Land Dispute" which, inter alia, states that the Hattori property is only 47,500 square meters (4.75 hectares).[3]

Concluding, however, that the evidence was insufficient to show that Hattori 'negligently' or 'intentionally' extended the boundaries of his mother's property," the trial court entered judgment for the defendants. It then noted that the Estate should instead seek relief at the administrative level and, if that failed, should sue the government for the shortfall in the size of its property. This appeal followed.

## II

 The Estate raises four issues for our review: (1) whether an encroachment exists on Lot 3150; (2) whether defendant Hattori owns Lot 3048, as his mother's successor in interest, and is bound by her previous acts; (3) whether the trial court "used the proper rule of law applicable to a boundary dispute"; and (4) whether the issuance of the certificate of title to Hattori's mother based on the 1983 government survey violated the Estate's due process rights and the principle of res judicata.

The first two issues raise mixed questions of law and fact which we review de novo. *Guerrero v. Guerrero*, 2 N.M.I. 61 (1991). The remaining two issues are issues of law and are reviewable de novo. *Ada v. Sablan*, 1 N.M.I. 415 (1990).

## III

### A. The Claim of Encroachment

The Estate contends that the trial court erred in concluding that the defendants were not liable based on the theory of encroachment. It asserts that the trial court disregarded evidence showing that the 1983 government survey of the Hattori property erroneously includes a portion of the Estate property. We are not persuaded by the Estate's contention that the 1983 government survey by itself, even if erroneous, constitutes an *encroachment* on the Estate's property.

---

[3] *See* Plaintiff's Exhibit 9, entitled "AGREEMENT REGARDING LAND DISPUTE BETWEEN JUAN A. HATORRI [sic] AND ABRAHAM E. TAISACAN REPRESENTING THE HEIRS OF SERVINO TAISACAN," dated August 21, 1984.

■ "An encroachment is an intrusion or invasion on adjoining property" without the benefit of an easement. 2 C.J.S. *Adjoining Landowners* § 41 (1972). An encroachment is a "continuing" trespass or nuisance. *Kafka v. Bozio*, 218 P. 753, 755 (Cal. 1923). A trespass, in turn, "consists of a *physical* entry upon the lands of another and taking possession thereof under such circumstances." *Id.* (Emphasis added.) Where the encroachment is above the land and not on it, it is a nuisance. *Case v. Sisich*, 275 P. 492, 494 (Cal. Dist. Ct. App. 1929). Thus, the general rule is that "[n]o person may erect buildings or other structures on his own land so that any part thereof, however small, extends beyond his boundaries and encroaches upon adjoining premises." *McKee v. Fields*, 210 P.2d 115, 116 (Or. 1949).

■ An encroachment requires some "physical" intrusion from the encroacher's land onto the land of another. To show an encroachment, one must establish the existence of some tangible thing (structure, trees, plants) that overlaps onto an adjoining lot. We are aware of no cases where an encroachment has been found without a physical or some tangible invasion on adjoining land.

None of the authorities cited by the Estate support the proposition that an encroachment occurs solely on the basis of an erroneous survey. Each of the following cases cited by the Estate involve a physical intrusion on the land of another: *Maull v. Lindsley*, 84 So. 92 (Fla. 1920) (action to enjoin defendants from obstructing dedicated public highway); *Overstreet v. Lamb*, 128 So. 2d 897 (Fla. Dist. Ct. App. 1961) (action to remove structure encroaching on plaintiff's property); *Boone v. Robinson*, 152 S.W. 753 (Ky. 1913) (action to establish boundary lines on basis of mutual mistake where partition fence built on plaintiff's land); *Murray Hotel Co. v. Golding*, 216 P.2d 364 (N.M. 1950) (adobe wall on land in dispute).

■ The record below shows no physical or tangible object extending from the Hattori property onto the Estate property. The Estate's claim of encroachment rests solely on its allegation that the government's 1983 survey of defendants' property was too expansive. Without more, the Estate's claim of encroachment fails.

■ This case is instead an action to quiet title—that is, an action to resolve a boundary dispute resulting from an allegedly erroneous survey. It is not an encroachment case. Although the Estate's complaint alleged only an encroachment cause of action which is not supported by the evidence, the parties did litigate the underlying boundary dispute issue, including whether the government survey of the Hattori property was wrong and whether the Estate's survey was correct. The

Estate's failure to technically plead a quiet title claim for relief does not preclude the Court from granting declaratory relief resolving the boundary dispute between the parties and quieting title to the Estate property.[4] The underlying issue as to the proper location of the mutual boundary should have been addressed below.

## B. The Underlying Boundary Dispute

■ Rather than addressing what is clearly a boundary dispute, the trial court concluded that a finding of encroachment depends on the existence of negligent or intentional conduct of the encroacher.[5] In effect, the court ruled that even if it found an encroachment on the Estate property, liability rests with the government. It never addressed the boundary dispute, which generally must be established first in an action for encroachment. We may do so now, based on the undisputed evidence set forth at trial.

The Estate presented the testimony of Pangelinan, a licensed surveyor, who established the corners and boundaries of Lot 3150 using the land title determinations of Lots 3048, 3150 and other adjacent lots, and the Asia Mapping Services and Land Commission surveys. The existence of a barbed wire fence and coconut trees which either completely or partially lined the borders between certain corners of the Estate property buttressed Pangelinan's conclusions as to the mutual boundary between the Hattori and Estate properties. His testimony was not contradicted by the defendants.

■ Each document in the record before the trial court regarding the Hattori property shows that the

---

[4] This litigation arose because of an allegedly erroneous government survey and resulting certificate of title. The appellate briefs and trial transcript trial clearly establish that the parties intended to quiet title. For example, during trial, defendants' counsel stated: "[T]he dispute between the plaintiff and the defendant[s] is basically a boundary dispute." Transcript at 154/7-8. Also, the Estate's brief states: "[T]he focus of the court is to determine where the correct boundary is and provide the appropriate relief." Plaintiff/Appellant's Opening Brief at 21. Under the circumstances, remanding the matter to the trial court for the Estate to amend its complaint to conform to the evidence in order to assert a cause of action for quiet title, Com. R. Civ. P. 15, and obtain a ruling by the trial judge regarding the boundary dispute would unjustifiably raise form over substance and waste judicial resources. *Manglona v. Civil Serv. Comm'n*, 3 N.M.I. 243 (1992).

[5] We need not address the issue as to the correctness of this legal conclusion because the trial record does not support a finding of encroachment.

property is approximately 4.75 hectares,[6] except for the disputed 1983 government survey upon which the Land Commission certificate of title was based.[7] Where the title determination, as here, does not describe any monuments but only size, quantity of land should be considered as evidence, although we acknowledge that it is "least reliable of all descriptive particulars." *Tellei v. Ngodrii*, 2 TTR 450, 452 (Trial Div. 1963); *Erickson v. Wick*, 591 P.2d 804, 807 (Wash. Ct. App. 1979).

 The defendants' witnesses could not explain the significant variance in the size of the Hattori property between that set forth in the Land Commission certificate of title and TD 422. A party cannot rely on a claim of ownership of substantially more land than "that mentioned in the grants" to him. *Tellei*, 2 TTR at 453. Despite the defendants' contrary assertions, the term "more or less" when applied to quantities should be applied with precaution and only to cover "some slight or unimportant inaccurac[ies]." *Ingersol v. Olson*, 272 N.W. 270, 273 (Minn. 1937). If the calls in the deed render the words unnecessary, they should be rejected. *Id.*

 Hattori acknowledged in the "Land Dispute Agreement" he signed with another adjacent land owner that his property is 4.75 hectares—not 5.71 hectares as he maintains in this litigation. He signed this agreement about six weeks after the certificate of title was issued. We find that this admission fortifies our conclusion that the Hattori property is not larger than 4.75 hectares.

Finally, the defendants do not dispute the accuracy of TD 519 or TD 422, nor do they question the accuracy of the Rota Land Management data or the survey methodology used by Pangelinan. Based on the undisputed evidence presented to the trial court, we hold that the Pangelinan survey of the Estate property is accurate, and that the boundary between Lots 3048 and 3150 is that shown on the survey prepared by Pangelinan. The trial court should, as to that mutual boundary, order the Land Commission to correct the 1983 government survey of the Hattori property and the certificate of title upon which it was based insofar as those documents erroneously show the boundary between adjoining Lots 3048 and 3150.

 The Estate asserted below that another portion of its property was erroneously included in still another adjoining property, Lot 3159, according to the 1983 government survey. Because the owner of this other adjoining lot was not a party to this action, we are not at liberty to determine the boundary between the Estate property and Lot 3159. *See Aquino v. Tinian Cockfighting Bd.*, 3 N.M.I. 284 (1992).[8]

## IV

 The judgment of the trial court is hereby **VACATED** and the matter is **REMANDED** for entry of judgment consistent with this opinion. In particular, the trial court's judgment shall declare that the mutual boundary between Lot 3048 and Lot 3150 be the same as that shown on the Alfred Pangelinan survey of the Estate property identified as DLS CHECK NO. 3050/90 and Plaintiff's Exhibit 1. The judgment shall also remand the matter to and instruct the Northern Marianas Land Commission to amend its record, in particular the July 6, 1984, certificate of title issued for Lot 3048, so that the mutual boundary between Lot 3048 and Lot 3150 corresponds to the Pangelinan survey of the Estate property.

---

[6] We note that even the Japanese land document introduced as Defendants' Exhibit "A" (and "A1") indicates that the Hattori property is 4.716 hectares, which is less than that set forth in TD 422.

[7] The defendants' assertion that the certificate of title is binding on the Estate pursuant to 2 CMC § 4251 is without merit. No evidence was presented that the Estate had actual or constructive notice of the Land Commission's determination of ownership of Lot 3048 or the issuance of the certificate of title. Accordingly it is not binding on the Estate. And, where the accuracy of a boundary is at issue, the Land Commission was obligated to notify the Estate and give it the opportunity to agree or disagree with any claim made affecting its land. 2 CMC § 4241(a)(2).

[8] Because of our disposition of this matter, we need not address the remaining two issues raised by the Estate. However, we note that the defendants' answer admits ownership of Lot 3048. And, there was never a dispute as to Hattori's ownership even after Hattori was substituted into this action by order of the court.